**J.A. BALISTRERI GREENHOUSES, for itself and as assignee of J.A. Balistreri Farms, Inc., Balistreri Greenhouses, Princess Greenhouses, Rosa Floral Co., Tagawa Greenhouses, Inc., and Sable Boulevard Greenhouses, Plaintiffs-Appellees,**

v.

**ROPER CORPORATION, Defendant–Appellant,**

and

**Ickes-Braun Glasshouses, Inc.; E.I. Du Pont De Nemours & Co.; H.H. Robertson Company; Reichhold Chemicals, Inc., Defendants-Appellees.**

No. 85CA0373.

Colorado Court of Appeals,
Div. IV.

June 2, 1988.

Rehearing Denied July 7, 1988.

Certiorari Granted (Roper) Jan. 23, 1989.

Waldbaum, Corn, Koff & Berger, P.C., Leonard N. Waldbaum, Denver, for plaintiffs-appellees.

Weller, Friedrich, Hickisch Hazlitt & Ward, Marc Brosseau, Julia M. Duffy, Denver, for defendant-appellant Roper Corp.

Phillsbury, Madison & Sutro, David S. Winton, Robert M. Westberg, and Clement L. Glynn, San Francisco, Cal., for defendant-appellee E.I. du Pont de Nemours & Co.

Zarlengo, Mott, Zarlengo & Winbourn, Reed L. Winbourn, Denver, for defendant-appellee H.H. Robertson Co.

Holland & Hart, Gregory A. Eurich, Denver, for defendant-appellee Reichhold Chemicals, Inc.

TURSI, Judge.

Roper Corporation (defendant) appeals the judgment entered in favor of plaintiffs, J.A. Balistreri Greenhouses, Balistreri Greenhouses, Princess Greenhouses, Rosa Floral Co., Tagawa Greenhouses, Inc., and Sable Boulevard Greenhouses. It asserts the trial court erred by: (1) failing to set-off the judgment against it by the settlements made by other defendants; (2) instructing the jury to consider the plaintiffs' lost profits as part of the damages contrary to the contract provision excluding consequential damages; and (3) failing to determine that the statute of limitations barred plaintiffs' claim for fraudulent concealment. We agree in part with Roper's first contention and disagree with its remaining contentions; therefore, we affirm in part and reverse in part.

Plaintiffs, commercial flower growers, filed this action against several defendants to recover damages attributed to the deterioration of fire retardant fiberglass panels which were incorporated into plaintiffs' greenhouses. Defendants H.H. Robertson Co. (Robertson) and Reichhold Chemicals, Inc., (Reichhold) manufactured the panels; defendant E.I. du Pont De Nemours & Co. (du Pont) manufactured the Tedlar PVF film which was bonded to the panels; and defendant Hooker Chemical Corp. (Hooker) supplied resin to Robertson which was applied to some of Robertson's panels. Ickes-Braun Glasshouses, Inc., (IBG) constructed and sold the greenhouses in question to the plaintiffs. By stipulation, it was agreed that IBG merged into Roper, and that Roper was responsible for the acts of IBG. Plaintiffs joined all of the defendants in all of their claims which included negligence, express warranty, implied warranties of fitness and merchantability, fraudulent concealment, negligent misrepresentation, strict liability, and breach of contract.

Each of the defendants answered denying liability and cross-claiming against the other defendants for common law indemnity or indemnity and contribution under the Uniform Contribution Among Tortfeasors Act. Early in the matter, Hooker settled with plaintiffs for $25,000 and was dismissed from the action.

Shortly before trial was scheduled to begin, du Pont, Reichhold, and Robertson also settled with the plaintiffs pursuant to a loan receipt agreement which provided in part:

"Settling Defendants agree to pay plaintiffs the difference between $1.3 million and the amount of plaintiffs' recovery against Roper Corporation and/or Ickes-Braun Glasshouses in the above entitled litigation, if such recovery is less than $1.3 million.

. . . .

"Any payment other than upon final judgment shall constitute a loan which plaintiffs shall be obligated to repay, but only to the extent of any eventual recovery against Roper and/or IBG."

These settling defendants also dismissed and released their pending cross-claims amongst themselves except insofar as nec-

essary to preserve their respective cross-claims against Roper.

The trial court approved this settlement agreement concluding that "any payments to be made to Plaintiffs under the Settlement Agreement [are] conditional and that accordingly no amount paid, or to be paid, under the Settlement Agreement shall off-set, reduce or act as a credit against a verdict or judgment entered against Roger [sic] and or Ickes-Braun Glasshouses in this proceeding." Further, it denied Roper's motion that it be deemed to have pled the defense of setoff. It also severed the cross-claims between these settling defendants and Roper from the plaintiffs' case and dismissed these settling defendants from plaintiffs' action.

Trial was held to a jury with Roper as the only defendant. The jury returned a verdict in favor of all six plaintiffs on their claims for negligence and breach of express warranty awarding a total of $850,530 in compensatory damages. The jury also found Roper liable for deceit based on fraudulent concealment with respect to J.A. Balistreri Greenhouses and Sable Boulevard Greenhouses and awarded punitive damages totaling $264,902.

## I

Roper asserts the trial court erred by failing to set-off the judgment against it by the settlements made by the other defendants. We agree in part.

First, Roper contends that the $25,000 settlement by defendant Hooker must be set-off. Plaintiffs concede Roper's right to set-off of this amount, and we agree. A release or a covenant not to sue given in good faith to one of two or more persons liable in tort for the same injury reduces the claim against the others by the amount stipulated or the amount of consideration paid, whichever is the greater. Colo. Sess. Laws 1977, ch. 195, 13–50.5–105 at 810 (statute as it existed at the time this action was filed).

Next, Roper maintains the judgment against it must be set-off by the difference between the compensatory damage judgment ($850,530) and the amount guaranteed by the remaining settling defendants ($1.3 million) in order to avoid the plaintiffs' receipt of a double recovery. We conclude this set-off is not required.

■ Money received under a valid loan receipt agreement is not a payment entitling co-tortfeasors to a reduction in judgment. *Webb v. Dessert Seed Co.*, 718 P.2d 1057 (Colo.1986). The plaintiffs' obligation to return any money advanced by settling defendants prevents the pretrial advance from being a "recovery" by the plaintiffs; therefore, a jury award does not result in a double recovery. *Webb v. Dessert Seed Co., supra.*

Roper maintains that *Webb v. Dessert Seed Co.* is distinguishable from this case. In *Webb* the settlement guaranteed an amount less than the jury's compensatory damage award; therefore, plaintiff's total recovery was equal to the jury award. However, in this case, the amount of the settlement guaranty exceeded the jury award; therefore, plaintiffs' total recovery was greater than the jury award, and Roper contends this constitutes a double recovery.

We conclude it is not a double recovery. Any amount plaintiffs receive from the settling defendants is conditional and reduced by the amount of the recovery judgment they receive from Roper. Consequently, the plaintiffs receive a single total recovery equal to the settlement guaranty with no duplication of payment by defendants.

Roper also asserts that the trial court erred in that it allowed settling defendants to hold it liable for more than its fair share of damages contrary to the provisions of § 13–50.5–105. Thus, Roper argues that the settling defendants seek refuge in the same statute which bars Roper from pursuing contribution claims. However, the trial court severed from the plaintiffs' action the cross-claims regarding contribution between these defendants; consequently, the issue of contribution among these defendants was not before the trial court, nor is it before this court on appeal. *See Webb v. Dessert Seed Co., supra.* Therefore, we will not address the contribution issue.

*See Kemp v. Empire Savings, Building & Loan Ass'n,* 660 P.2d 899 (Colo.1983).

## II

▮ Inasmuch as the contracts executed by Roper and plaintiffs explicitly excluded consequential damages, Roper contends the trial court erred by instructing the jury to consider plaintiffs' lost profits caused by diminished flower yield as part of the compensatory damages. We disagree.

However, consequential damages could have been awarded in this case under two theories despite the contractual limitation. If the exclusion of consequential damages was unconscionable, they could be awarded pursuant to § 4–2–719(3), C.R.S. Also, if under the circumstances the limited remedy of material replacement failed of its essential purpose by leaving the plaintiffs without a remedy, the plaintiffs could recover them pursuant to § 4–2–719(2) and § 4–2–715, C.R.S.

The trial court instructed the jury to determine both questions. Roper contends that the trial court erred in this jury instruction. It asserts unconscionability was a question of law for the trial court to determine and finds error in the fact that the language in the essential purpose instruction did not exactly track that used in the corresponding statute.

While Roper made several objections to this jury instruction, it did not object on the grounds it asserts on appeal. Parties are required to make all objections to jury instructions before they are submitted to the jury and only the grounds so specified shall be considered on appeal. C.R.C.P. 51; *Montgomery Ward & Co. v. Kerns,* 172 Colo. 59, 470 P.2d 34 (1970). Therefore, we do not address these allegations of error.

## III

Roper also asserts the plaintiffs failed to file their action within the statute of limitations period for fraud; therefore, their claim for fraudulent concealment was barred. We perceive no error in this regard.

▮ The statute of limitations for actions based on fraud provides such actions "shall be filed within three years after the discovery by the aggrieved party of the facts constituting such fraud, and not afterwards." Colo. Sess. Laws 1977, ch. 195, § 13–80–109 at 810 (statute as it existed at the time this action was filed). The three-year period begins to run when the defrauded person has knowledge of facts which would, in the exercise of proper prudence and diligence, enable him to discover the fraud perpetrated against him. *Norton v. Leadville Corp.,* 43 Colo.App. 527, 610 P.2d 1348 (1979). Whether the statute bars a particular claim is a question of fact for the jury. *Norton v. Leadville Corp., supra.*

▮ Here, the action was filed November 16, 1979; therefore, the statute of limitations could have barred plaintiffs' claims if the plaintiffs discovered or could have discovered the fraud prior to November 16, 1976. Roper argues that since the plaintiffs were aware of the panels' failure before November 16, 1976, they were in possession of facts which, by prudent and reasonable inquiry, would have enabled them to discover any fraudulent concealment.

However, the plaintiffs' awareness of problems relating to the quality and durability of the panels does not equate to knowledge which would enable them to discover that the defendants knew the panels were defective and fraudulently concealed those problems from them. This determination was properly submitted to the jury, and we will not disturb its disposition of that issue on review. *See Miller v. Mountain Valley Ambulance Service, Inc.,* 694 P.2d 362 (Colo.App.1984).

We have considered and rejected Roper's contention that the trial court erred in instructing the jury regarding the statute of limitations.

That part of the judgment that fails to set-off the $25,000 settlement by Hooker is reversed and the remainder of the judgment is affirmed. The cause is remanded to the trial court with directions to amend

the judgment to reflect the $25,000 settlement by Hooker.

KELLY, C.J., and METZGER, J., concur.