Robert COOLEY and Rita Cooley, d/b/a Cooley Dairy; Donald Weed; Ben Konishi, D.V.M.; Pamela Ann Konishi; Mark Konishi; and Jeffrey Konishi, Petitioners and Cross–Respondents,

v.

BIG HORN HARVESTORE SYSTEMS, INC., a Colorado corporation, and A.O. Smith Harvestore Products, Inc., a Delaware corporation, Respondents and Cross–Petitioners.

No. 88SC420.

Supreme Court of Colorado,
En Banc.

June 24, 1991.
Rehearing Denied July 15, 1991.

Wood, Ris & Hames, P.C., E. Gregory Martin, Denver, Wilfred R. Mann, Boulder, for petitioners and cross-respondents.

Richard J. Banta, Bernard W. Messer, Englewood, for respondent and cross-petitioner Big Horn Harvestore Systems, Inc.

The Law Firm of Michael S. Porter, Michael S. Porter, Wheat Ridge, Frances A. Benedetti, Wray, for respondent and cross-petitioner A.O. Smith Harvestore Products, Inc.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Cooley v. Big Horn Harvestore Systems, Inc.*, 767 P.2d 740 (Colo.App.1988), the Colorado Court of Appeals affirmed in part and reversed in part a judgment entered on a jury verdict in favor of the petitioners and cross-respondents, plaintiffs at trial, and against respondents and cross-petitioners, defendants at trial. Having granted certiorari to consider the propriety of the Court of Appeals decision, we affirm in part, reverse in part, and remand the case with directions.

I

In July 1980, plaintiffs Robert Cooley and Rita Cooley executed two agreements with defendant Big Horn Harvestore Systems, Inc. (hereinafter Big Horn), in connection with their purchase of a Harvestore automated grain storage and distribution system for use in their dairy operation. Big Horn is an independent distributor of Harvestore systems pursuant to agreements with defendant A.O. Smith Harvestore Products, Inc. (hereinafter AOSHPI), the manufacturer of the Harvestore system.[1] The Cooleys purchased the Harve-

---

1. The transaction was structured as a lease-purchase. The Cooleys executed two purchase orders with Big Horn. Big Horn purchased the Harvestore equipment from AOSHPI and then nominally sold it to the financing lessor, Agristor Leasing. The Cooleys and Agristor later

store system to improve the efficiency and productivity of their dairy. Plaintiffs Donald Weed; Ben Konishi, D.V.M.; Pamela Konishi; Mark Konishi; and Jeffrey Konishi are owners of cows placed in the Cooleys' dairy herd pursuant to an agreement obligating the Cooleys to care for and feed the cows in return for the right to retain the proceeds of sale of milk produced by those cows.

The Harvestore system is designed to enhance the nutritional quality of cattle feed by means of an in-silo fermentation process. An essential feature of the system is its asserted ability to limit oxygen contact with the feed, thus facilitating long-term storage of grain. The Harvestore silo itself is composed of glass-fused-to-steel panels. The silo also features breather bags which expand or contract to equalize the pressure inside and outside the silo no matter how frequently outside temperature patterns might vary. Because the oxygen exchange takes place completely within the breather bags, damaging oxygen contact with the feed is limited. During the two years prior to the sale, Big Horn provided the Cooleys with numerous promotional materials prepared by AOSHPI, including films, videotapes, pamphlets, and a book explaining the Harvestore system.

In early 1981, the Cooleys began to feed their herd with grain stored in the Harvestore system. Shortly thereafter, the health of the herd began to deteriorate and milk production substantially declined. The Cooleys informed Big Horn of these developments, and over the succeeding eighteen months Big Horn representatives made repairs to the structure, gave advice to the Cooleys concerning feed ratios, and assured the Cooleys that the system was functioning properly.

The health of the cows continued to deteriorate. Some died, and the Cooleys ultimately sold the remainder of the herd in 1983. The plaintiffs then filed this action against Big Horn and AOSHPI seeking damages based on claims of breach of implied warranties of merchantability and fitness for a particular purpose, breach of express warranties, breach of contract because of the failure of essential purpose of a limited remedy of suit for breach of warranty to repair or replace any defective part thereof (hereinafter referred to as the "failure of essential purpose" claim), negligence, deceit, and revocation of acceptance.[2]

Prior to the commencement of trial, the trial court entered summary judgment in favor of the defendants and against the plaintiffs on all claims of breach of implied warranties and breach of express warranties. The claims alleging revocation of acceptance and deceit were also dismissed by the trial court. The jury was instructed solely on the claim against AOSHPI and Big Horn for failure of essential purpose of the warranty and on a claim against Big Horn for negligence in recommending improper nutritional programs.

The jury returned a verdict in favor of the plaintiffs and against Big Horn on the negligence claim in the total amount of $87,723.77. The jury also returned a verdict in favor of the plaintiffs and against both Big Horn and AOSHPI in the amount of $245,077.26 on the failure of essential purpose claim. In special verdict forms, the jury assigned seventy-five percent liability to Big Horn and twenty-five percent liability to AOSHPI on the failure of essential purpose claim. The jury also found Big Horn ninety percent negligent and the Cooleys ten percent negligent on the negligence claim. The trial court therefore reduced the amount of damages recoverable

executed a lease with purchase option. Agristor, a named party defendant, is not a party to this appeal. Unless otherwise indicated, all references to the term "purchase agreement" in this opinion refer to the documents dated July 28, 1980, executed by Big Horn and by the Cooleys, each of which contains identical language respecting applicable warranties, exclusions, disclaimers and remedies.

2. The Konishis and Weed claimed damages against AOSHPI for the death of and injury to their cows pursuant to section 4–2–318, 2 C.R.S. (1973), which provides that warranties extend to any person "who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty."

on the negligence claim to the sum of $78,951.40. The trial court also determined that the award of damages returned by the jury on the negligence claim duplicated a portion of the award of damages returned on the failure of essential purpose claim. The trial court ultimately entered judgment for the plaintiffs and against Big Horn and AOSHPI in the amount of $245,077.26.

On appeal, the Court of Appeals affirmed the negligence verdict against Big Horn but reversed the failure of essential purpose verdict against AOSHPI and Big Horn. The court held that the plaintiffs were barred from asserting their failure of essential purpose claim because AOSHPI was entitled to receive timely notice of the claim pursuant to section 4–2–607(3)(a), 2 C.R.S. (1973), of the Colorado Commercial Code (hereinafter the Code) and the plaintiffs did not give such notice to AOSHPI. The court reversed the failure of essential purpose verdict against Big Horn on the ground that the purchase agreement limited Big Horn's responsibility to proper installation of the Harvestore system and the evidence did not establish any failure of installation.[3] Observing that it could not determine what factors were considered by the jury in its calculations of damages on the negligence claim, and determining that the plaintiffs were entitled to recover damages for economic loss on their negligence claim, the Court of Appeals remanded the case for a new trial on the issue of the amount of damages attributable to Big Horn's negligence.

We granted the plaintiffs' petition for certiorari and the defendants' cross-petitions for certiorari to consider the following issues: whether section 4–2–607(3)(a), 2 C.R.S. (1973), requires notice to a remote manufacturer as a condition precedent to the initiation of a breach of contract claim based on the failure of essential purpose doctrine; whether evidence of specific defects in material or workmanship is essential to a failure of essential purpose claim;

whether a contractual disclaimer of consequential damages is rendered invalid by the establishment of a failure of essential purpose claim; whether an exculpatory clause was sufficient to disclaim negligence in providing nutritional advice; whether the record contains sufficient evidence to establish the plaintiffs' claim of negligent nutritional advice; and whether the case should be remanded for retrial on the issue of damages.[4]

II

The Court of Appeals held that a commercial buyer seeking recovery from a manufacturer for a breach of contract claim resulting in property damage alone must, pursuant to the provisions of section 4–2–607(3)(a), 2 C.R.S. (1973), give the manufacturer timely notice of the claimed breach as a condition precedent to any recovery. The plaintiffs contend that they complied with the notice provisions of the statute by giving timely notice of their failure of essential purpose claim to Big Horn. We agree with the plaintiffs' contention.

Section 4–2–607(3)(a), 2 C.R.S. (1973), provides that "[w]here a tender has been accepted: (a) [t]he buyer must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy...." This provision serves as a condition precedent to a buyer's right to recover for breach of contract under the statute. *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 206 (Colo.1984). The question of what constitutes a reasonable time is dependent on the circumstances of each case. *White v. Mississippi Order Buyers, Inc.*, 648 P.2d 682 (Colo.App.1982). The parties agree that the plaintiffs gave timely notice to Big Horn of their claim but did not directly notify AOSHPI of such claim.

The notice provision of section 4–2–607(3)(a) serves three primary purposes. It

---

**3.** This issue has not been appealed and thus is not before this court.

**4.** Because of the grounds upon which the Court of Appeals resolved the case, it did not consider the effect of the lack of evidence of defects in materials or workmanship or the effect of the consequential damages disclaimer.

provides the seller with an opportunity to correct defects, gives the seller time to undertake negotiations and prepare for litigation, and protects the seller from the difficulties of attempting to defend stale claims. *Palmer v. A.H. Robins Co.; Prutch v. Ford Motor Co.*, 618 P.2d 657 (Colo.1980). *See generally* White and Summers, *Uniform Commercial Code* § 11–10 at 481 (3d ed. 1980). The Code defines 'seller' as "a person who sells or contracts to sell goods." § 4–2–103(1)(d), 2 C.R.S. (1973). The official comment to the Code states in pertinent part that "the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." § 4–2–607, 2 C.R.S. comment 4 (1973).

In *Palmer v. A.H. Robins Co.*, 684 P.2d 187, this court construed the statute's notice provision in the context of a product liability action. In *Palmer*, a consumer injured through use of a defective intrauterine device sought recovery for damages against the manufacturer of the product, A.H. Robins Co. Although the plaintiff, prior to initiating litigation, notified the immediate seller, her doctor, of the fact that she allegedly sustained injuries as a result of defects in the product, she did not so notify Robins. Robins argued that the plaintiff's claims against it should be dismissed for failure to comply with section 4–2–607(3)(a).

We rejected that argument. We construed the term "seller" as used in section 4–2–607(3)(a) to "refer only to the immediate seller who tendered the goods to the buyer." *Palmer* at 206. We explained that "[u]nder this construction, as long as the buyer has given notice of the defect to his or her immediate seller, no further notification to those distributors beyond the immediate seller is required." *Id.* We also observed that a relaxed notification requirement was especially appropriate in *Palmer* because the plaintiff was a lay consumer who "would not ordinarily know of the notice requirement." *Id.* at 207 n. 3.

The Court of Appeals concluded that the plaintiffs here were commercial purchasers who suffered only economic loss, as distinguished from the lay consumer who sought relief in *Palmer*. Assuming, *arguendo*, that the plaintiffs here were commercial purchasers,[5] it must be observed that our decision in *Palmer* required construction of a statute adopted by the General Assembly for application in all commercial contexts. The language of section 4–2–607(3)(a) is unambiguous: it requires a buyer to give notice of a defective product only to the "seller." *See* 2 Anderson, *Uniform Commercial Code* § 2.607:24. The General Assembly has not elected to require advance notice to a manufacturer of litigation for breach of the manufacturer's warranty of a product, and we find no compelling reason to create such a condition precedent judicially in the context of commercial litigation. The filing of a lawsuit is sufficient notice to encourage settlement of claims, and applicable statutes of limitation protect manufacturers from the difficulties of defending against stale claims. *See Palmer; Owens v. Glendale Optical*, 590 F.Supp. 32, 36 (S.D.Ill.1984); *Shooshanian v. Wagner* 672 P.2d 455 (Alaska 1983); *Mattos, Inc. v. Hash*, 279 Md. 371, 368 A.2d 993, 996 (Md.1977).

■ Several courts considering whether a purchaser seeking recovery under a manufacturer's warranty must give notice to the manufacturer as well as to the seller of the product under statutory provisions similar to section 4–2–607(3)(a) have reached a similar result. *See, e.g., Firestone Tire and Rubber Co. v. Cannon*, 53 Md.App. 106, 452 A.2d 192 (1982), *aff'd*, 295 Md. 528, 456 A.2d 930 (1983). Some courts have reached contrary results. *See Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976); *Branden v. Gerbie*, 62 Ill. App.3d 138, 19 Ill.Dec. 492, 379 N.E.2d 7 (1978); *Western Equip. Co. v. Sheridan Iron Works, Inc.*, 605 P.2d 806 (Wyo.1980). Many such courts have recognized that in

---

5. The trial court made no factual determination regarding the status of the plaintiffs. We are not prepared to conclude on the basis of the record that with regard to their purchase of the Harvestore system the Cooleys were sophisticated commercial buyers or that the other plaintiffs were sophisticated commercial users of the system.

most nationwide product distribution systems, the seller/representative dealer may be presumed to actually inform the manufacturer of any major product defects. *Goldstein v. G.D. Searle & Co.*, 62 Ill. App.3d 344, 347–48, 19 Ill.Dec. 208, 211–12, 378 N.E.2d 1083, 1086–87 (1978); *see also* Prince, *Overprotecting the Consumer? § 2–607(3)(a). Notice of Breach in Non–Privity Contexts*, 66 N.C.L.Rev. 107, 151 (1987). Furthermore, as one commentator has noted, "[i]t is perhaps more reasonable to treat notice to an immediate seller as sufficient against a remote seller than vice versa, in view of the immediacy of relation that exists in the one instance but not in the other." Phillips, *Notice of Breach in Sales and Strict Tort Liability Law: Should There be a Difference?*, 47 Ind.L.J. 457, 473 (1971); *see also Snell v. G.D. Searle & Co.*, 595 F.Supp. 654, 656 (N.D. Ala.1984) (applying Alabama law); *Firestone Tire and Rubber Co. v. Cannon*, 53 Md.App. 106, 452 A.2d 192 (1982), *aff'd*, 295 Md. 528, 456 A.2d 930 (1983). This presumption forms the basis of the principle that a remote manufacturer may raise as its own defense the buyer's failure to give timely notice to the immediate seller. *See, e.g., Snell v. G.D. Searle & Co.*, 595 F.Supp. 654, 656 (N.D.Ala.1984) (applying Alabama law); *Owens v. Glendale Optical Co.*, 590 F.Supp. 32, 36 (S.D.Ill.1984) (applying Illinois law); *Goldstein v. G.D. Searle & Co.*, 62 Ill.App.3d 344, 347–48, 19 Ill.Dec. 208, 211–12, 378 N.E.2d 1083, 1086–87 (1978). In view of the unambiguous language of section 4–2–607(3)(a), we conclude that a purchaser injured by a product is not required to give notice of such injury to a remote manufacturer prior to initiating litigation against such manufacturer.

AOSHPI urges us to adopt the rationale expressed in *Carson v. Chevron Chemical Co.*, 6 Kan.App.2d 776, 635 P.2d 1248 (1981). In that case three farmers brought suit against a herbicide manufacturer and dealer to recover damages for breach of warranties. Observing that in ordinary buyer-seller relationships the Kansas Commercial Code equivalent of section 4–2–607(3)(a) requires that notice of an alleged breach need only be given to the buyer's immediate seller, *Carson*, 635 P.2d at 1256, the Kansas Court of Appeals concluded that the plaintiffs were required to notify the manufacturer under the particular circumstances of that case. The court explained its holding as follows:

> In those instances, however, where the buyer and the other parties to the manufacture, distribution and sale of the product are closely related, or where the other parties actively participate in the consummation of the actual sale of the product, the reasons for the exclusion of such other parties from the K.S.A. 84–2–607(3)(a) notice provision cease to exist.

*Id.*

In our view, the rationale of *Carson* supports the result we reach. The Kansas Court of Appeals emphasized that under the circumstances disclosed by the evidence the defendant was in effect a direct seller to the plaintiffs. Here, AOSHPI, the manufacturer, was isolated and insulated from the plaintiffs. The contract specified that Big Horn was the seller. AOSHPI, if a seller, was a seller to Big Horn, not to the plaintiffs. As far as the plaintiffs were concerned, the only direct relationship established by the contract and by the conduct of the parties was their relationship with Big Horn. Under these circumstances, to require the plaintiffs to give statutory notice to AOSHPI when not specifically required to do so by statute would unreasonably promote commercial bad faith and inequitably deprive good faith consumers of a remedy, contrary to the purpose of the statute. We reject such a construction.

### III

AOSHPI contends that to recover on their failure of essential purpose claim, the plaintiffs were required to establish the existence of some specific defect in materials or workmanship, which they failed to do. AOSHPI alternatively asserts that the purchase contract itself prohibits recovery of consequential damages by the plaintiffs.

We disagree with these arguments.[6]

## A

Section 4–2–719, 2 C.R.S. (1973), contains the following pertinent provisions respecting the abilities of contracting parties to limit the remedies which are available to a purchaser in the event a seller breaches an agreement:

**Contractual modification or limitation of remedy.** (1) Subject to the provisions of subsections (2) and (3) of this section and of section 4–2–718 on liquidation and limitation of damages:

(a) The agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and

(b) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case, it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.

§ 4–2–719, 2 C.R.S. (1973). These provisions allow great flexibility in negotiations for the provision of goods. Section 4–2–719(2), however, reflects a legislative determination that in limited circumstances enforcement of an agreement to restrict a buyer's potential remedies would produce unconscionable results. *See generally,* Eddy, *On the Essential Purpose of Limited Remedies: The Metaphysics of UCC Section 2–719(2),* 65 Calif.L.Rev. 28 (1977).

The plaintiffs' failure of essential purpose claim is premised on the language of section 4–2–719(2).[7] The plaintiffs acknowledge that the purchase agreement contains an express warranty of repair or replacement and a disclaimer clause limiting their remedy to a suit for breach of that warranty.[8] They argued at trial that because this remedy failed of its essential

6. As previously indicated, the Court of Appeals did not address these questions. *See* n. 4, *infra.*

7. To establish their claim of failure of essential purpose of the remedy of suit for breach of a warranty to repair or replace any defective product or parts thereof, the plaintiffs were required to establish that the product was defective in material or workmanship, that the defendants had an opportunity to repair or replace the defects, that they were unable to do so, that their inability to effectively repair or replace substantially affected the value of the product and that the impairment of the value damaged the plaintiffs. *See* C. Smith & B. Clark, *The Law of Product Warranties,* 8.04[2] (1984).

8. The purchase agreement contains the following pertinent provisions:
WARRANTY OF MANUFACTURER AND SELLER
If within the time limits specified below, any product sold under this purchase order, or any part thereof, shall prove to be defective in material or workmanship upon examination by the Manufacturer, the Manufacturer will supply an identical or substantially similar replacement part f.o.b. the Manufacturer's factory, or the Manufacturer, at its option, will repair or allow credit for such part.…
SECOND DISCLAIMER
NO OTHER WARRANTY, EITHER EXPRESS OR IMPLIED AND INCLUDING A WARRANTY OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE HAS BEEN OR WILL BE MADE BY OR IN BEHALF OF THE MANUFACTURER OR THE SELLER OR BY OPERATION OF LAW WITH RESPECT TO THE EQUIPMENT AND ACCESSORIES OR THEIR INSTALLATION, USE, OPERATION, REPLACEMENT OR REPAIR. NEITHER THE MANUFACTURER NOR THE SELLER SHALL BE LIABLE BY VIRTUE OF THIS WARRANTY, OR OTHERWISE, FOR ANY SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGE (INCLUDING BUT NOT LIMITED TO THOSE RESULTING FROM THE CONDITION OR QUALITY OF ANY CROP OR MATERIAL STORED IN THE STRUCTURE) RESULTING FROM THE USE OR LOSS OF THE USE OF EQUIPMENT AND ACCESSORIES. THE MANUFACTURER MAKES NO WARRANTY WITH RESPECT TO THE ERECTION OR INSTALLATION OF THE EQUIPMENT, ACCESSORIES, OR RELATED EQUIPMENT BY THE HARVESTORE DEALER, WHO IS AN INDEPENDENT CONTRACTOR, OR ANY OTHER INDEPENDENT CONTRACTOR. IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

purpose, the language of the agreement purporting to limit their available remedies was not enforceable. The failure of essential purpose claim was tried on this theory, and the jury instructions stated that to return a verdict for the plaintiffs against AOSHPI, the jury must first determine that the plaintiffs had established the necessary factual predicate for application of the failure of essential purpose doctrine. *See Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo.App.1988); *Leprino v. Intermountain Brick Co.*, 759 P.2d 835 (Colo.App.1988).

AOSHPI initially asserts that there was insufficient evidence for the jury to find a failure of essential purpose because there was no evidence of any specific defect in material or workmanship[9] and because AOSHPI was not given an opportunity to repair or replace such defect.

■ The policy behind the statutory provision establishing the failure of essential purpose doctrine is discussed in the official comments to the Code, as follows:

> [I]t is of the very essence of a sales contract that at least minimum adequate remedies be available. If the parties intend to conclude a contract for sale within this Article they must accept the legal consequence that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.... [U]nder subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article.

§ 4–2–719, 2 C.R.S. comment 1 (1973). The comment makes clear that determination of the applicability of the failure of essential purpose doctrine requires a two-tiered evaluation: first, identification of the essential purpose of the limited remedy, and second, whether the remedy in fact failed to accomplish such purpose. *Milgard Tempering, Inc. v. Selas Corp.*, 902 F.2d 703 (9th Cir. 1990); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir.1980). From a buyer's standpoint, a promise to repair or replace defective parts supplies assurance that within a reasonable period of time defective goods will be put into the condition they were warranted to be in at the time they were purchased.[10] *Milgard; Chatlos; Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978); *Beal v. General Motors Corp.*, 354 F.Supp. 423 (D.Del.1973). *See* C. Smith & B. Clark, *The Law of Product Warranties*, 8.04[2] at 8–52 (1984). The plaintiffs introduced sufficient evidence to establish that the Harvestore system was never functional, thus permitting the jury to conclude that the limited remedy of a suit for breach of the warranty to repair or replace failed of its essential purpose.

AOSHPI suggests that its warranty protecting against a defect in material and workmanship is limited solely to protection against flaws resulting from the manufacturing process and did not encompass general product design defects. From this premise, AOSHPI concludes that lack of evidence of some specific defect in some specific manufactured part is fatal to the failure of essential purpose claim. This view of the transaction is not supported by the evidence.

The product advertised, purchased, and warranted was a functioning system for storage and distribution of grain. The Cooleys purchased this system. They did not purchase a combination of component parts. *See Polycon Industries, Inc. v. Hercules Inc.*, 471 F.Supp. 1316, 1323 (E.D. Wis.1979). *But see Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336 (6th Cir.1958); *Bruffey Contracting Co. v. Burroughs Corp.*, 522 F.Supp. 769 (D.Md.1981), *aff'd* 681 F.2d 812 (4th Cir. 1982). A remedy fails of its essential pur-

---

9. The record contains evidence of defects in operational components of the Harvestore system, which defects were repaired by Big Horn, as well as evidence of a dent in the system's structure which was not repaired.

10. From the seller's standpoint, the purpose of such warranty is to foreclose efforts by the buyer to return goods or to recover damages as a remedy for defective goods.

pose if it operates to deprive a party of the substantial value of the contract. § 4–2–719(2), 2 C.R.S. comment 1 (1973). Fair application of warranty principles require a determination of what the seller has agreed to sell and what the buyer has agreed to pay for. *See* § 4–2–313, 2 C.R.S. comment 4 (1973). *See also Computerized Radiological Services v. Syntex Corp.,* 595 F.Supp. 1495 (E.D.N.Y.1984) *aff'd in part, rev'd in part on other grounds,* 786 F.2d 72 (2d Cir.1986). The Cooleys' purchase had value only to the extent the Harvestore system functioned, as advertised, as an entire unit to increase the productivity of their dairy herd. Additionally, AOSHPI's warranty promised repair or replacement of any defective product or part thereof. The evidence established that the product was defective and was not repaired or replaced with a non-defective product. In these circumstances, the Cooleys were entitled to argue to the jury that the limited remedy of repair or replacement failed to guarantee them the value of the system they purchased. *Agristor Credit Corp. v. Schmidlin,* 601 F.Supp. 1307 (D.Or.1985). The record clearly supports the jury's conclusion that the system as a whole was defective.

AOSHPI's argument that it was not given an opportunity to repair or replace the Harvestore system is not persuasive. The purchase agreement does not specify the means by which the Cooleys were to provide AOSHPI with the opportunity to repair or replace defects. The agreement does provide that "[n]o product or part shall be returned to the Seller without written authorization and shipping instructions first having been obtained from the Seller." This provision in essence directs the Cooleys to address any questions concerning the Harvestore system to Big Horn. The evidence fully supports the conclusion that, as the Cooleys alleged, the agreement was intended to assure the Cooleys that Big Horn would assume any role assigned by the purchase agreements to AOSHPI to repair defects in the system; to determine what parts, if any, to replace; and to inform the Cooleys how the provisions of the

remedy to repair or replace were to be effectuated.

B

■ AOSHPI also argues that the purchase agreement prohibits the plaintiffs from recovering any consequential damages on their failure of essential purpose claim. We disagree.

The jury returned a verdict in the amount of $245,077.26, against AOSHPI and Big Horn on the plaintiffs' failure of essential purpose claim, which sum included consequential damages for injuries to the plaintiffs' herds and for loss of milk profits. The verdict form did not require the jury to itemize its damage award. However, the evidence with regard to damages was presented in three distinct categories, as follows: the value of the Harvestore system ($88,636.00), damage to the dairy herds ($87,723.77), and loss of milk profits ($68,717.49).

The purchase agreement contains the following pertinent provision:

NEITHER THE MANUFACTURER NOR THE SELLER SHALL BE LIABLE BY VIRTUE OF THIS WARRANTY, OR OTHERWISE, FOR ANY SPECIAL OR CONSEQUENTIAL LOSS OR DAMAGE (INCLUDING BUT NOT LIMITED TO THOSE RESULTING FROM THE CONDITION OR QUALITY OF ANY CROP OR MATERIAL STORED IN THE STRUCTURE) RESULTING FROM THE USE OR LOSS OF THE USE OF EQUIPMENT AND ACCESSORIES.

The trial court concluded that this provision did not bar the plaintiff from recovering consequential damages in view of the language of section 4–2–719(2), 2 C.R.S. (1973). AOSHPI argues that section 4–2–719(3), 2 C.R.S. (1973), which permits buyers to waive their rights to recover consequential damages, controls. We agree with the trial court.

We have determined that the evidence supports the jury's verdict that the limited remedy of replacement or repair of defective parts failed of its essential purpose. Section 4–2–719(2) states that when a seller

is found liable to a buyer on the basis of the failure of essential purpose doctrine, "remedy may be had as provided in this title." Section 4–2–714(3) of the Code expressly provides that a purchaser may recover consequential damages resulting from a seller's breach of contract. Thus the Code clearly establishes consequential damages as a remedy available to buyers of goods.

■ Section 4–2–719(3) of the Code states as follows:

Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable, but limitation of damages where the loss is commercial is not.

§ 4–2–719(3), 2 C.R.S. (1973). AOSHPI argues that section 4–2–719(3) establishes the right of contracting parties to limit the general availability of consequential damages established by section 4–2–714 and that the Cooleys did so limit their rights here.[11]

Courts that have considered the relationship of these two provisions as they appear in other state commercial codes have reached divergent results. Many courts have concluded that the broad sweep of the literal language of provisions identical to section 4–2–719(2) represents a legislative decision to permit a buyer who suffers loss because of the failure of essential purpose of a limited remedy of repair or replacement to recover all damages resulting from such failure. *See, e.g., Milgard Tempering, Inc. v. Selas Corp.,* 902 F.2d 703 (9th Cir.1990) (applying Washington law); *Fiorito Bros. v. Fruehauf Corp.,* 747 F.2d 1309 (9th Cir.1984); *Soo Line R.R. v. Fruehauf Corp.,* 547 F.2d 1365 (8th Cir.1977); *Beal v. General Motors Corp.,* 354 F.Supp. 423 (D.Del.1973); *Jones & McKnight Corp. v. Birdsboro Corp.,* 320 F.Supp. 39 (N.D.Ill. 1970); *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978).

Indeed, our own Court of Appeals has so construed section 4–2–719(2) of the Code. *J.A. Balistreri Greenhouses v. Roper Corp.,* 767 P.2d 736 (Colo.App.1988); *Leprino v. Intermountain Brick Co.,* 759 P.2d 835, 837 (Colo.App.1988); *cf. Wenner Petroleum Corp. v. Mitsui & Co. (U.S.A.), Inc.,* 748 P.2d 356 (Colo.App.1987).

It has been observed that the decision of contracting parties to limit potential remedies to the single remedy to repair or replace defective parts is based on a number of assumptions which, if unfounded, fundamentally change the parties' intended allocation of risk. *Clark v. International Harvester Co.,* 99 Idaho 326, 581 P.2d 784 (1978). These include the assumptions that the seller will diligently and in good faith attempt to repair, that the seller will be able to effect repairs within a reasonable time period, and that any consequential loss sustained during the period of repair will be minimal. *Waters v. Massey–Ferguson, Inc.,* 775 F.2d 587 (4th Cir.1985); *S. M. Wilson & Co. v. Smith International,* 587 F.2d 1363 (9th Cir.1978); *AES Technology Sys., Inc. v. Coherent Radiation,* 583 F.2d 933 (7th Cir.1978). *See generally,* Eddy, *On the Essential Purpose of Limited Remedies: The Metaphysics of UCC Section 2–719(2),* 65 Calif.L.Rev. 28 (1977). Under the rationale of these cases, a loss that is itself caused by the failure of the remedy of suit for breach of a warranty to repair or replace defective parts could not be within the contemplation of the parties, and therefore should not be prohibited when such bargained-for remedy fails of its essential purpose. A buyer reasonably expecting to avoid significant consequential loss through the effective use of such remedy should not be required to absorb such loss when the remedy fails of its essential purpose. *See Waters v. Massey–Ferguson, Inc.,* 775 F.2d 587, 591–92 (4th Cir.1985); *Kearney & Trecker v. Master Engraving,* 107 N.J. 584, 527 A.2d 429 (1987).

A few courts have determined that the adequacy of the buyer's remedy in the ab-

---

11. Section 4–2–714(3), 2 C.R.S. (1973), provides that where there has been a breach in regard to accepted goods "[i]n a proper case, any inciden-tal and consequential damages under section 4–2–715 may also be recovered."

sence of the ability to recover consequential damages should govern the applicability of the two provisions. *Kelynack v. Yamaha Motor Corp., U.S.A.*, 152 Mich. App. 105, 394 N.W.2d 17 (1986) (where the bulk of the damages were consequential, remedy without consequential damages was no remedy at all); *see also Earl M. Jorgensen Co. v. Mark Constr. Inc.*, 56 Haw. 466, 540 P.2d 978 (1975); *Oldham's Farm Sausage Co. v. Salco, Inc.*, 633 S.W.2d 177 (Mo.App.1982). These courts give great weight to language in their statutes that mirrors the language of section 4-2-719 of the Code. This approach requires determination on a case-by-case basis of whether a particular limitation is conscionable under all applicable circumstances.

Finally, some courts, emphasizing language of commercial code provisions adopted in their jurisdictions that parallel the language of section 4-2-719(3), have concluded that the two sections constitute distinct clauses applicable to different circumstances. Under this view, section 4-2-719(3) is a particular provision modifying the availability of consequential damages established generally by section 4-2-714(3). *See Kaplan v. RCA Corp.*, 783 F.2d 463, 467 (4th Cir.1986); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable and Cold Storage Co.*, 709 F.2d 427, 434-35 (6th Cir. 1983); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1086 (3d Cir.1980); *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1375 (9th Cir. 1978); *Johnson v. John Deere Co.*, 306 N.W.2d 231, 238 (S.D.1981); *Envirotech Corp. v. Halco Eng'r, Inc.*, 234 Va. 583, 364 S.E.2d 215, 220 (1988). *See also* J. White & R. Summers, *Uniform Commercial Code* § 12-10 (3d ed. 1980); B. Clark & C. Smith, *The Law of Product Warranties* § 8.04[2][c] (1984 & 1990 Supp.). This approach suggests that the failure of essential purposes doctrine articulated in section 4-2-719(2) requires application of a substantial value of the bargain standard, while the question of the viability of a contractual waiver of the availability of the remedy of consequential damages contained in section 4-2-719(3) is measured by a conscionability standard. Thus, a remedy may fail in its essential purpose because it deprives a party of the substantial value of a bargained-for benefit, but a clearly expressed exclusion of consequential damages as a remedy available to such party in that circumstance is enforceable if not unconscionable.

In construing statutory provisions, we must give effect to the language and intent of the General Assembly and seek to harmonize apparently contrasting provisions. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990); *City of Ouray v. Olin*, 761 P.2d 784 (Colo.1988). The Code itself provides some guidance in resolving the issue here presented. It is designed to enhance freedom of contract and innovation in commercial practices while establishing good faith, diligence and reasonableness as limits upon such freedom of contract. § 4-1-102, 2 C.R.S. (1973). It also provides that the remedies provided thereunder are to be liberally administered to further those ends. § 4-1-106, 2 C.R.S. (1973). In view of these guidelines, we find persuasive those authorities which suggest that the two subsections in question must be construed together to effectuate their purposes.

In adopting section 4-2-719(2), the General Assembly recognized that while contracting parties may generally limit the remedies available in the event of foreseeable and bargained-for contingencies, when a limited remedy fails of its essential purpose any contractual limitation directly related to the assumption that the limited remedy constituted a sufficient remedy must also fail. In effect, this provision protects contracting parties from unforeseen and unbargained-for contingencies. In adopting section 4-2-719(3), the General Assembly recognized that in most situations contracting parties may agree to limit or exclude the availability of the remedy of consequential damages, subject to a conscionability standard. Neither section grants absolute rights to contracting parties.

It is neither possible nor desirable to suggest absolute guidelines for the recon-

ciliation of these two provisions in all cases. In this case, however, the applicability of the statutory scheme is not difficult. The purchase agreement purports to exclude all warranties other than the promise to repair or replace defective parts while simultaneously excluding all remedies for the recovery of economic loss sustained as a breach of that limited warranty. The language excluding consequential damages and the language limiting remedies appears in the same sentence of the purchase agreement. That sentence commences with the following phrase: "Neither the manufacturer nor the seller shall be liable by virtue of this warranty, or otherwise, for any special or consequential loss or damage...."

In construing the terms of a contract, courts must give full effect to the intent of the parties as expressed by the language of the agreement. *In re May v. United States*, 756 P.2d 362 (Colo.1988). The above-quoted sentence of the purchase agreement refers to the exclusion of the remedy of consequential damages resulting from liability "by virtue of this warranty, or otherwise." The remedy of suit for breach of warranty having failed in its essential purpose, the plaintiffs' remedy of consequential damages here does not arise by virtue of that warranty. The phrase "or otherwise" does not, in our view, evidence an intent to render consequential damages unavailable when the only remedy provided by the purchase agreement fails of its essential purpose and therefore is no remedy at all.

While in other circumstances parties may, pursuant to section 4–2–719(3), by clear and unambiguous language, unequivocally state in a separate provision that the remedy of consequential damages shall not be available in the event the remedy of a suit for breach of a limited warranty to repair or replace fails of its essential purpose, no such intent may be gleaned from the language of this purchase agreement. To the extent the parties here agreed to limit the availability of consequential damages as a remedy, they did so on the assumption that the limited warranty to repair or replace would suffice to protect the plaintiffs from substantial consequential damage losses. The total inadequacy of that warranty was neither foreseen nor bargained for. *See Fidelity and Deposit Co. v. Krebs Engineers*, 859 F.2d 501 (7th Cir.1988); *Waters v. Massey–Ferguson, Inc.*, 775 F.2d 587 (4th Cir.1985).

When a purchase agreement establishing that the only warranty provided is a warranty to repair or replace defective parts contains no separate provision unambiguously recording the intent of parties to prohibit a buyer's recovery of consequential damages even when such sole remedy fails of its essential purpose, the buyer is entitled by virtue of section 4–2–719(2) to the statutory remedy of consequential damages notwithstanding a general contractual disclaimer to the contrary. The purchase agreement here contains no such provision; thus the trial court properly concluded that the plaintiffs were not foreclosed from recovering consequential damages.

## IV

Big Horn contends that the Court of Appeals erred in affirming the judgment entered against it on the plaintiffs' negligence claim. Big Horn argues that the purchase agreement contains language that bars the filing of any negligence claim and, alternatively, that the evidence adduced at trial does not support the jury's verdict with respect to that claim. We reject those arguments.

## A

The purchase agreement contains the following sentence:

IRRESPECTIVE OF ANY STATUTE, THE BUYER RECOGNIZES THAT THE EXPRESS WARRANTY SET FORTH ABOVE, IS THE EXCLUSIVE REMEDY TO WHICH HE IS ENTITLED AND HE WAIVES ALL OTHER REMEDIES, STATUTORY OR OTHERWISE.

Insofar as it is applicable to Big Horn, the warranty referred to states as follows: "The Seller warrants only that the foundation will be properly installed and that the

product will be erected in strict conformance with the Manufacturer's specifications." Big Horn argues that this sentence of the purchase agreement bars the plaintiffs from asserting any right to recover damages allegedly resulting from negligent conduct by Big Horn. We do not agree.

■ The contract provision in question resembles a forfeiture clause. Such clauses are not favored in Colorado. *Grooms v. Rice*, 163 Colo. 234, 429 P.2d 298 (1967). To be enforceable, contractual provisions seeking to effect a waiver or forfeiture of a party's rights must be couched in clear, unambiguous language. *Montgomery Ward & Co. v. Reich*, 131 Colo. 407, 282 P.2d 1091 (1955).

■ The sentence in question is at best ambiguous and imprecise. Initially, it must be noted that the statement that the "express warranty" is the buyers' "exclusive remedy" constitutes a *non sequitur*. While damages for breach of warranty is a remedy, a warranty is a guarantee, not a remedy.

More importantly, as the Court of Appeals observed, the limiting clause, in context, merely constitutes a limitation on the buyers' choice of remedies for the seller's failure to properly assemble the Harvestore system. The sentence does not contain a limitation on the buyers' right to seek remedies for negligent conduct distinct from conduct necessary to install a foundation and erect the superstructure. The plaintiffs' negligence claim against Big Horn is based on an alleged breach of a separate duty of care arising from Big Horn's conduct in providing advice and recommendations concerning adoption, modification or rejection of nutritional programs.

Big Horn argues alternatively that its provision of nutritional advice to the plaintiffs was a service contemplated by the purchase agreement and therefore subject to the exclusivity language of the contract. The purchase agreement contradicts such argument. It provides expressly that the document constitutes "the entire and only agreement between the Seller and Buyer; and no oral statements or agreements not confirmed herein, or by subsequent written agreements, shall be binding on either the Seller or Buyer." Big Horn's responsibilities with regard to the communication of information concerning nutritional programs were not governed by the purchase agreement. We therefore agree with the Court of Appeals that the purchase agreement does not bar the plaintiffs' negligence claim against Big Horn.

B

■ Big Horn also contends that, contrary to the conclusion of the Court of Appeals, the evidence adduced at trial failed to establish any negligent conduct on its part and failed to establish the applicable standard of care by which to measure its conduct. We again disagree.

Factual findings implicit in a jury verdict will be upheld on appeal if supported by the evidence considered in the light most favorable to the prevailing party. *Denver Dry Goods Co. v. Gettman*, 167 Colo. 539, 448 P.2d 954 (1969). When viewed in the light most favorable to the plaintiffs, the evidence establishes that Big Horn agents repeatedly gave the plaintiffs advice concerning appropriate ratios of nutrients and feeds, that Big Horn was not qualified to give such advice, that the advice was incorrect, and that the plaintiffs sustained damages as a result of such incorrect advice. Expert witnesses testified on behalf of Big Horn as well as on behalf of the plaintiffs; their testimony, together with the trial court's instructions, was sufficient to inform the jury of the standard of care applicable to persons purporting to be qualified to give advice concerning nutritional feeding programs for dairy herds. *See Melville v. Southward*, 791 P.2d 383 (Colo.1990). We find ample evidentiary support in the record for the jury's conclusion that Big Horn acted negligently in breach of a duty of care it owed to the plaintiffs.

V

The plaintiffs contend that the Court of Appeals erred in remanding the case for a new trial on the issue of the amount of

damages attributable to Big Horn's negligence. Big Horn argues that the Court of Appeals erred in failing to order a new trial on the issue of liability for negligence as well as on the issue of damages. We conclude that a new trial is not warranted.

The Court of Appeals ordered a new trial on the question of the appropriate amount of damages to be assessed against Big Horn in large part because it reversed the judgment entered for the plaintiffs on their failure of essential purpose claim. We have concluded that the judgment entered on the claim against AOSHPI must be reinstated. The trial court expressly concluded that, in view of the evidence, the instructions, and the parties' theories of the case, the special jury verdict establishing the sum of $245,077.26 as the total damages to which the plaintiffs were entitled on their failure of essential purpose claim included all damages separately assessed against Big Horn on the plaintiffs' negligence claim. This ruling is supported by the record. We therefore agree with the plaintiffs' argument that no retrial with respect to questions of the jury's award of damages is necessary.

Big Horn asserts that it should have been granted a new trial on the question of its liability for negligence because the jury improperly considered Big Horn's alleged liability on the failure of essential purpose claim. Big Horn contends that in view of the Court of Appeals' conclusion that Big Horn was not liable to the plaintiffs on the failure of essential purpose claim, the trial court must be deemed to have erred in failing to grant Big Horn's motion for directed verdict on that issue. Accordingly, Big Horn argues, it is entitled to a new trial during which questions of liability based on theories of negligence are not confused with questions of liability based on contract principles.

We do not find this argument persuasive. The jury was properly instructed on the elements of the plaintiffs' separate and distinct claim of negligence by Big Horn, and we have determined that there was sufficient evidence to support the jury's verdict against Big Horn on that claim. Separate special verdict forms permitting the jury to enter a verdict against the plaintiffs on their failure of essential purpose claim against AOSHPI and Big Horn while simultaneously entering a verdict in favor of the plaintiffs on their negligence claim against Big Horn further emphasized the distinct bases of the plaintiffs' two claims for relief. As we view the record, Big Horn has not established that the jury's consideration of the plaintiffs' failure of essential purpose claim against it and AOSHPI created juror confusion with reference to Big Horn's liability on the negligence claim. *See Moseley v. Lemirato*, 149 Colo. 440, 370 P.2d 450 (1962).

## VI

For the foregoing reasons, we reverse those portions of the judgment of the Court of Appeals vacating the trial court judgment entered in favor of the plaintiffs on their failure of essential purpose claim against AOSHPI. The judgment of the Court of Appeals is otherwise affirmed, and the case is remanded to that court with directions to reinstate the judgment entered by the trial court in favor of the plaintiffs and against AOSHPI on the failure of essential purpose claim and in favor of the plaintiffs and against Big Horn on the negligence claim.