**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 3, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEBORAH ANN PLATT and DALLAS
VAUGHN PLATT,

     Plaintiffs - Appellants,

v.

WINNEBAGO INDUSTRIES, INC.,

     Defendant - Appellee.

No. 18-1408

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-02736-WYD-SKC)**

---

Ronald L. Burdge, Burdge Law Office Co., L.P.A., Dayton, Ohio, for Plaintiffs-
Appellants.

Thomas S. Rice (Jonathan N. Eddy, with him on the brief), Senter Goldfarb & Rice,
LLC, Denver, Colorado, for the Defendant-Appellee.

---

Before **HARTZ, SEYMOUR,** and **MATHESON,** Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

The Platts purchased a 2016 Winnebago Era RV on January 18, 2016. This purchase was subject to Winnebago's New Vehicle Limited Warranty, which required the Platts to bring the RV for repairs to an authorized dealer and then, if those repairs were insufficient, to Winnebago itself before they could bring an action against Winnebago. The RV suffered from a litany of defects and the Platts took it in for warranty repairs to Camping World of Golden, Colorado (Camping World), an authorized Winnebago dealership, on numerous occasions for numerous separate defects within the first seven and a half months of their ownership. When the Camping World repairs did not resolve the Platts' issues with the RV, they scheduled an appointment for repairs with Winnebago in Forest City, Iowa, but they subsequently cancelled the appointment. Instead, they sued Winnebago for breach of express and implied warranties under both the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312, and Colorado state law, and also for deceptive trade practices in violation of the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. § 6-1-105. Winnebago filed a motion for summary judgment which the district court granted, dismissing all of the Platts' claims. The Platts appeal, and we affirm.

## I.

### Background

On January 18, 2016, the Platts purchased a 2016 Winnebago Era RV from Lazydays in Seffner, Florida. The RV purchase included a twelve-month New Vehicle Limited Warranty. A Winnebago showroom brochure described the RV as a "pure joy" to drive with "legendary construction standards." Aplt. App., vol. II at 438. The brochure also referenced the limited warranty and notified customers to "[s]ee your

2

dealer for complete warranty information." *Id.* at 452. The Platts executed a purchase agreement with Lazydays, affirming that they had been provided the opportunity to review the limited warranty upon their request. Although the Platts were aware of the warranty, they did not ask to review a copy of it because they "felt very trusting that [they] had a really good motorhome manufactured by a reputable manufacturer" and they just "didn't think [they] had to worry about it." Aplt. App., vol. I at 228.

The warranty provided a two-step process to obtain repairs. First, the owner had to "present [his or her] motorhome to an authorized Winnebago service facility during normal business hours and provide a written list of items to be inspected or repaired to the service facility and Winnebago." *Id.* at 78. Second, if the owner believed the repairs at the authorized service facility were inadequate, the owner was required to "contact Winnebago Owner Relations **in writing** and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty." *Id.* The limited warranty further provided that "Winnebago may require you to deliver the motorhome to another authorized service center or its facilities in Forest City, IA. If Winnebago requests you to bring the motorhome to Forest City, IA, Winnebago may cover the reasonable costs of transporting the motorhome to and from Forest City, IA." *Id.* According to the warranty language, if the owner denied Winnebago the opportunity to repair the RV, warranty coverage for that repair would become void. The purchase agreement stated that the

3

described warranty was the "sole and exclusive remedy" for a breach of an express or implied warranty. Aplt. App., vol. I at 53.

On the way home from Florida, the Platts began discovering defects in the RV including a loud squeaky noise, an inoperable GPS and furnace, and screens falling off the windows. Between February 5, 2016 and September 1, 2016, the Platts brought the RV in for warranty repairs to Camping World, an authorized Winnebago dealership in Golden, Colorado, seven times for forty-four separate defects. Despite numerous attempts by Camping World to repair the problems, the Platts claim that at least eleven issues persisted.

While Camping World serviced the Platts' RV, a representative of Winnebago spoke with the Platts three times over the phone. During their final conversation on June 13, 2016, the Platts scheduled an appointment to bring the RV to Forest City, Iowa on September 26, 2016, so that Winnebago could perform factory repairs pursuant to the warranty. On July 29, 2016, the Platts' attorney sent a letter to Winnebago expressing their dissatisfaction with the RV. Winnebago replied on September 1, 2016, confirming that all repairs were to be performed in Forest City at no cost to the Platts during their upcoming appointment. Instead of bringing the RV to Winnebago for repairs, however, the Platts claim that they had "lost faith" that Winnebago would repair their RV and they cancelled the September 26 appointment. Aplt. App., vol. I at 62.

The Platts initiated the underlying litigation on November 8, 2016, by filing a complaint in the United States District Court for the District of Colorado. Winnebago

4

again reached out to the Platts and offered to conduct all repairs at its Forest City facility free of charge, but the Platts declined. The complaint asserts claims for relief against Winnebago for breach of express and implied warranties under Magnuson-Moss and Colorado state law and for violations of the CCPA. Winnebago filed a motion for summary judgment which the district court granted, dismissing all of the Platts' claims. The Platts appeal.

## II.

## Standard of Review

We review a grant of summary judgment *de novo*. *Mid-Continent Cas. Co. v. True Oil Co.*, 767 F.3d 1000, 1004 (10th Cir. 2014) (citation omitted). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making such a determination, we resolve factual disputes and draw reasonable inferences in favor of the non-moving party." *Mid-Continent Cas. Co.*, 767 F.3d at 1004.

The moving party may satisfy its initial burden of demonstrating a lack of a genuine issue of material fact by showing "an absence of evidence to support the nonmoving party's case." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). If the moving party succeeds, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *1–800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). When a nonmoving party fails to prove an essential element of its case, all other facts become "immaterial." *Mountain*

*Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) (citation omitted).

## III.

## Discussion

**A.    Express and Implied Warranty Claims Under Magnuson-Moss Warranty Act**

The Platts brought their express and implied warranty claims pursuant to Magnuson-Moss, which creates a private right of action for any "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the statute], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Where Magnuson-Moss claims are brought for breach of a limited warranty, as here, we look to state law to determine the causes of action and the remedies available. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[C]laims under the Maguson-Moss Act stand or fall with [a plaintiff's] express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."); *see also Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) ("In [actions alleging breach of a limited warranty under Magnuson-Moss], we then look to state law to determine the remedies available."). Here, all parties agree that Colorado law applies to each of the Platts' express and implied warranty claims.

### 1.    Opportunity to Repair

The Platts first contend the district court erred in concluding that they failed to provide Winnebago an opportunity to repair the RV prior to claiming a breach of

6

warranty. This determination is key to the disposition of several of the Platts' claims because the limited warranty specifically states that it is the "sole and exclusive warranty applicable to [the RV]" and that "[r]efusal to allow Winnebago an opportunity to repair the [RV] voids warranty coverage for that repair." Aplt. App., vol. I at 78.

The Platts assert that bringing their RV to Camping World on several occasions was sufficient to fulfill the warranty requirement that they must afford Winnebago an opportunity to repair the RV. This contention requires us to interpret the limited warranty. In doing so, we apply the principles of general contract interpretation. *See Gergel v. High View Homes, LLC*, 996 P.2d 233, 235 (Colo. App. 1999) (applying "ordinary principles of contract interpretation" to interpret a limited warranty agreement). Accordingly, we "should give effect to the plain and generally accepted meaning of the contractual language," while also "examining the entire instrument [without] viewing clauses or phrases in isolation." *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009) (citations omitted). A contract should also be interpreted by "seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984) (citation omitted).

The limited warranty required the Platts to follow two steps before claiming a breach.[1] First, the Platts had to "present [their] motorhome to an authorized Winnebago service facility." Aplt. App., vol. I at 78. Second, if repairs by the authorized dealer were inadequate, "[the owner] must contact Winnebago Owner Relations in writing and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty." *Id.* Winnebago may then request that the owner bring the RV directly to Forest City or to a different authorized dealer. *See id.*

The facts of this case plainly show that, while the Platts completed step one of the limited warranty, they stopped short of completing step two. They satisfied step one by

---

[1] The relevant terms of the New Vehicle Limited Warranty provide that:

> Except as otherwise provided herein, to obtain warranty repairs, you must, at your own cost, present your motorhome to an authorized Winnebago service facility during normal business hours and provide a written list of items to be inspected or repaired to the service facility and Winnebago. In the event you feel the repairs made by an authorized service center fail or are otherwise inadequate, you must contact Winnebago Owner Relations **in writing** and advise them of the failure or inadequacy, including a list of the defects, and provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of this warranty. Winnebago may require you to deliver the motorhome to another authorized service center or its facilities in Forest City, IA. If Winnebago requests you to bring the motorhome to Forest City, IA, Winnebago may cover the reasonable cost of transporting the motorhome to and from Forest City, IA. Refusal to allow Winnebago an opportunity to repair the motorhome voids warranty coverage for that repair.

Aplt. App., vol. I at 78.

bringing their RV to Camping World, but they do not dispute that they never took their RV to "another authorized service center" after Camping World was unable to repair the defects. The Platts did schedule an appointment for warranty repairs with Winnebago in Iowa, but they cancelled that appointment. Cancellation of the appointment denied Winnebago an opportunity to repair the RV.

Although the Platts contend that bringing the RV to Camping World satisfied the second step of the warranty process, that does not comport with the plain language of the limited warranty which clearly distinguishes between an authorized dealership and Winnebago. If we were to accept the Platts' reading of the warranty, the two steps of the warranty process would collapse into one, which would violate interpretive principles by rendering meaningless any differentiation between Winnebago and its authorized dealers. The district court did not err in determining that the Platts failed to follow the repair procedures in the warranty.

The Platts also assert that Winnebago cannot claim it did not have an opportunity to repair because it never made a specific request that the Platts bring the RV to Iowa. As support for their argument, they rely on the phrase "Winnebago *may require* you to deliver the motorhome to another authorized service center or its facilities in Forest City, IA." *Id.* (emphasis added). We agree with the district court, however, that the language of the warranty did not require Winnebago to request a chance to repair but rather instead required the Platts to provide Winnebago with an opportunity to repair prior to a claim of breach. The Platts scheduled an appointment to bring the RV to Iowa in September 2016

9

and Ms. Platt testified that the Platts "understood [the appointment] would be [for] warranty work." *Id.* at 62. The Platts thus failed to provide Winnebago an opportunity to repair as required by the New Vehicle Limited Warranty when they unilaterally cancelled the appointment.

### 2.  Express Warranty

To state a claim for breach of an express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) "the breach proximately caused the losses claimed as damages," and (4) defendant received timely notice of the breach. *Fiberglass Component Prod., Inc. v. Reichhold Chems., Inc.*, 983 F. Supp. 948, 953 (D. Colo. 1997) (citation omitted) (applying Colorado law). The parties agree that the warranty here is an express limited warranty but disagree as to whether it was breached. As we have already held, the terms of the warranty conditioned a breach on Winnebago's failure to repair the RV. The Platts contend reasonable minds could conclude that Winnebago breached the express warranty to repair the RV by failing to repair it within a reasonable amount of time and a reasonable number of attempts. But Winnebago did not breach the warranty because the Platts failed to provide it with an opportunity to perform repairs.

The Platts contend that Winnebago waived its right to require factory repairs by waiting forty-two days to respond to the Platts' written notice. A waiver is a voluntary relinquishment of a known right. *See, e.g.*, *Grimm Const. Co. v. Denver Bd. of Water Comm'rs*, 835 P.2d 599, 602 (Colo. App. 1992). We decline to reach the issue of

Winnebago's waiver because the Platts raised this issue for the first time on appeal in their reply brief. We have held that a "failure to raise an issue in an opening brief waives that issue," and that we "will not entertain issues raised for the first time on appeal in an appellant's reply brief." *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174 (10th Cir. 2005) (quotation marks and citations omitted). Because of the Platts' failure, Winnebago was denied "the opportunity to demonstrate that the record does not support [the Platts'] factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result." *Id.* at 1175 (citation omitted).

The Platts also argue that the express "warranty failed of its essential purpose and, therefore was breached." Aplt. Br. at 20. "[T]he applicability of the failure of essential purpose doctrine requires a two-tiered evaluation: first, identification of the essential purpose of the limited remedy, and second, whether the remedy in fact failed to accomplish such purpose." *Cooley v. Big Horn Harvestore Sys., Inc.*, 813 P.2d 736, 744 (Colo. 1991). Because the parties agreed that the essential purpose of the New Vehicle Limited Warranty was to repair and replace defects in the RV, only the second question is at issue here. "When a seller cannot cure defects by repeated repair attempts, a remedy limited to repair fails of its essential purpose." *Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 241 (Colo. App. 2002). To support a claim for such failure here, the Platts must establish that "the defendant[ ] had an opportunity to repair or replace the defects" and "that [it was] unable to do so." *Cooley*, 813 P.2d at 743 n.7.

As we established at the outset, however, the facts demonstrate that the Platts

failed to give Winnebago the required opportunity to repair their RV. In an effort to avoid this problem, the Platts argue that Camping World was an agent of Winnebago and reasonable minds could therefore find that Winnebago had an opportunity to repair the RV through its agent. But the limited warranty clearly distinguishes between Winnebago and other authorized service facilities. It also provides that prior to a claim of breach, customers "must . . . provide Winnebago an opportunity to repair the motorhome," which may be through "*another* authorized service center *or* [Winnebago's] facilities in Forest City, IA." Aplt. App., vol. I at 78 (emphasis added). The Platts did not take the RV to any "[other] authorized service center" and cancelled their appointment to bring the RV to Forest City. *Id.* Accordingly, the district court correctly held that Winnebago did not breach the express warranty.

### 3. Implied Warranty

The Platts also contend the district court erred in granting summary judgment on their claim that Winnebago breached an implied warranty because there are genuine issues of material fact as to whether the RV was fit for its ordinary purpose and use. Unless excluded or modified, a warranty that the goods shall be merchantable is implied in every contract for the sale of goods under Colorado law. Colo. Rev. Stat. § 4-2-314(1); *Graham Hydraulic Power, Inc. v. Stewart & Stevenson Power, Inc.*, 797 P.2d 835, 838 (Colo. App. 1990). For goods to be merchantable, they must be fit for the ordinary purposes for which such goods are used. Colo. Rev. Stat. § 4-2-314(2)(c).

Because the New Vehicle Limited Warranty specifies a two-step process that

12

constitutes a condition precedent to any claim of breach, we agree with the district court that a buyer's remedies under this warranty depend on whether Winnebago breached the warranty. As the court explained, "[i]f Winnebago does not breach the warranty or any implied warranty, an owner's remedies are limited to the repair and replace remedy." Aplt. App., vol. II at 535.

The Platts argue again that they provided Winnebago multiple opportunities to repair the RV and its failure to do so was a breach of the implied warranty. As we explained *supra* at 6–10, however, the Platts failed to provide Winnebago the required opportunity to repair the RV under the terms of the agreement. Accordingly, we affirm the district court's determination that Winnebago did not breach an implied warranty that the goods were of marketable quality.

For the first time on appeal, the Platts contend the plain language of the New Vehicle Limited Warranty does not limit the remedies available under an *implied* warranty.[2] When a theory is "intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it." *Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011). Where counsel fails to raise a theory in the district court out of neglect, however, we consider it forfeited and we review forfeited theories for plain error. *Id.* at 1128; *see also United States v. Zubia–Torres*, 550 F.3d

---

[2] Under the limited warranty provision, buyers must "provide Winnebago an opportunity to repair the motorhome prior to claiming a breach of <u>this warranty</u>." Aplt. App., vol. I at 78 (emphasis added). Based upon the warranty's use of "this warranty," the Platts argue that the limitation on remedies applies only to the express warranty and not to any implied warranty.

13

1202, 1205 (10th Cir. 2008). In order to avoid a waiver on appeal, a party is required to identify plain error as the standard of review in their opening brief and to provide a defense of that standard's application. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010). Accordingly, a party's "failure to argue for plain error and its application on appeal [] surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison*, 634 F.3d at 1131.

Here, the Platts not only fail to identify plain error as the standard in their opening brief on appeal, they only make a conclusory assertion in their reply brief that the standard should apply. *See* App. Rep. Br. at 18 ("The issue [of whether Winnebago breached the implied warranty] is still reviewable for plain error because the argument was not intentionally abandoned but simply not specifically raised at the district court level."). They make no effort to explain how the district court plainly erred. We will not "apply a standard of review for [the Platts] on our own initiative, without the benefit of the adversarial process, and without any opportunity for [Winnebago] to be heard on the question." *McKissick*, 618 F.3d at 1189. The Platts clearly waived plain error review and we therefore need not reach the merits of this issue.[3]

---

[3] The Platts also claim for the first time on appeal that failure to provide Winnebago with an opportunity to repair only "voids warranty coverage for *that* repair" and the two-step process is therefore not a prerequisite to a claim of breach generally. Aplt. Br. at 15 (citing Aplt. App., vol. I at 78) (emphasis added). Again, we need not reach the merits of this claim because the Platts failed to develop an argument for plain error review. *McKissick*, 618 F.3d at 1189.

14

### 4.    Enforceability

The Platts' fourth claim on appeal is that the district court erred when it held that the limitations on damages provided for in the warranty were enforceable.[4]  Colorado law provides that parties to express warranties "may limit or alter the measure of damages recoverable . . . by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts."  Colo. Rev. Stat. § 4-2-719(1)(a).  All parties agree that the New Vehicle Limited Warranty is an express warranty, but the Platts assert that the limitation on remedies included therein is not enforceable because reasonable minds could conclude that: (1) the warranty fails of its essential purpose; (2) the limitations on damages are unconscionable; and (3) there was no meeting of the minds with respect to the limitations on damages.  We address each in turn.

#### i.    Failure of Essential Purpose

The Platts repeat their argument that the warranty failed of its essential purpose and claim that as a result the limitations on damages are not enforceable.  Where a warranty fails of its essential purpose, the remedies available for breach are all of those provided under the commercial code.  Colo. Rev. Stat. § 4-2-719(2).  As we explained, *supra* at 6–10, however, the Platts failed to provide Winnebago with its own opportunity to repair the RV and therefore cannot establish their claim that the warranty failed of its

---

[4] The Platts raise this argument with respect to both the express and implied warranties.

essential purpose. They are thus bound by the limitations on remedies provided in the warranty.

        ii.        Unconscionability

The Platts' second argument is that the limitations on damages are unconscionable. If a court determines that a contract was "unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Colo. Rev. Stat. § 4-2-302(1). Moreover, a limitation on remedies that is unconscionable is unenforceable. Colo. Rev. Stat. § 4-2-719(3). The Colorado Supreme Court has identified seven factors relevant to determining whether a contract is unconscionable:

> [1] a standardized agreement executed by parties of unequal bargaining strength, [2] lack of opportunity to read or become familiar with the document before signing it, [3] use of fine print in the portion of the contract containing the provision, [4] absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated, [5] the terms of the contract, including substantive unfairness, [6] the relationship of the parties, including factors of assent, unfair surprise and notice, and [7] all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect.

*Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986) (citations omitted). To succeed, a plaintiff must demonstrate both procedural and substantive unconscionability. "The first, second, third, sixth, and seventh factors relate to procedural unconscionability." *Vernon v. Qwest Commc'ns Int'l, Inc.,* 925 F. Supp. 2d 1185, 1195 (D. Colo. 2013).

16

The Platts present only superficial arguments that the terms of the New Vehicle Limited Warranty are unconscionable, which we are not obligated to address. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (concluding that appellant's superficial argument with no record citations or legal authority was "insufficient to garner appellate review"). In their initial brief, the Platts merely make passing references to unconscionability. Only their reply brief mentions the seven factors for unconscionability articulated by the Colorado Supreme Court, providing only seven conclusory statements that each factor was satisfied without any factual support or reasoning.

Even considering the merits of the Platts' argument, the factors do not support a determination that the warranty was unconscionable. While it was a standardized agreement, this first factor alone is not enough to support the Platts' claim. *Vernon*, 925 F. Supp. 2d at 1195.

The facts show with respect to the second factor that the Platts had an opportunity to read the warranty before signing it. They were admittedly aware of the warranty but chose not to review it because they "felt very trusting that [they] had a really good motorhome manufactured by a reputable manufacturer" and they "didn't think [they] had to worry about it." Aplt. App., vol. I at 228.

Third, while the Platts claim that the limitation of damages section is in fine print, an examination of the warranty reveals that it is a single-page document with text of uniform size and contains no fine print. *See Rocky Mountain Chocolate Factory, Inc. v.*

17

*SDMS, Inc.*, No. 06–cv–01212–WYD–BNB, 2007 WL 4268962, at \*7 (D. Colo. Nov. 30, 2007) (rejecting argument that provision was inconspicuous where it "was in normal print consistent with other clauses in the contract").[5]

With regard to the fourth factor, the Platts argue there is no evidence that the limitation of damages is commercially reasonable or could have been anticipated. But Colorado law permits parties to express contracts to place limitations on damages, *see* Colo. Rev. Stat. §§ 4-2-719(1)(a) & 4-2-316(4), making such limitations commercially reasonable. And the Platts testified that they were aware of the limited warranty at the time of purchase. In fact, the purchase agreement signed by the Platts makes clear that the stated warranty is the "exclusive and sole remedy" available. Aplt. App., vol. I at 53. We have previously upheld a disclaimer where "the provision should have been reasonably anticipated from the terms of the sales agreement." *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 852 (10th Cir. 1986). Because the Platts were aware of the warranty and chose not to review it, the limitations provided therein "should reasonably have been anticipated." *Davis*, 712 P.2d at 991.

Fifth, the Platts assert that "the limiting terms of the warranty are highly unfair to the consumer purchaser," Aplt. Br. at 19, but they do not identify any particular "unfair" terms of the agreement. Our review of the warranty does not reveal any terms that are

---

[5] The Platts also assert that the damages limitations were unconscionable because they were not conspicuous. We agree with the district court that conspicuousness is only a factor under Colorado law when a limited warranty excludes or modifies liability under an implied warranty but not, as here, where the New Vehicle Limited Warranty only "restricts Plaintiff's remedies for such claims." Aplt. App., vol. II at 542 n.4; *see also* Colo. Rev. Stat. § 4-2-316(2).

"highly unfair to the consumer purchaser" or terms that warrant a determination of unconscionability.

Sixth, because the Platts admitted that they were aware of the warranty at the time of purchase, there is no evidence that their relationship with Winnebago caused unfair surprise or lack of notice.

The seventh factor is a "catchall that allows for consideration of all of the factors surrounding formation of the contract." *Vernon*, 925 F. Supp. 2d at 1195. The Platts again state that they did not receive a copy of the New Vehicle Limited Warranty prior to purchasing the RV. We find the Platts' argument unpersuasive for the reasons we relied on for factor two. Accordingly, we agree with the district court that the terms of the warranty were not unconscionable.

### iii. Meeting of the Minds

The Platts' third argument is that because they were not provided with a copy of the limited warranty prior to purchasing the RV, there was no meeting of the minds and therefore the limitations on damages contained in the warranty are not enforceable. Under Colorado law, however, "in the absence of fraud or concealment, a party signing a contract without reading it cannot deny knowledge of its contents and is bound by what she [or he] signed." *Day v. Snowmass Stables, Inc.*, 810 F. Supp. 289, 294 (D. Colo. 1993) (applying Colorado law). As previously stated, the Platts executed a purchase agreement with Lazydays, affirming that they had been provided the opportunity to review the warranty upon their request which they failed to read. The Platts are thus

bound by the exclusive remedies of the warranty regardless of whether they read the warranty before signing the agreement.

## B.    Colorado Consumer Protection Act

The Platts' final claim of error is that the district court incorrectly granted summary judgment in Winnebago's favor for alleged violations of the CCPA. The CCPA protects consumers against deceptive business practices by providing a remedy for consumer fraud. *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003); *see also* Colo. Rev. Stat. §§ 6-1-101–115. To establish a claim under the CCPA, the burden is on the Platts to support all of the following elements:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings*, 62 P.3d at 146–47 (citation omitted). The Platts assert that Winnebago made false statements or omitted material information in its showroom brochure about the RV, failed to disclose material information about the warranty limitations, and knew at the time of execution that Winnebago could not honor the express or implied

20

warranties but nevertheless executed the sale.  Based upon these allegedly deceptive

practices, the Platts claimed six separate violations of the CCPA.

The Platts' first, second, and third claims allege violations of Colo. Rev. Stat.

§ 6-1-105(1)(e), (g), and (i),[6] and each claim relies on the same facts.  The Platts contend

the showroom brochure misrepresented that the RV was a "pure joy" with "legendary

construction standards," and misrepresented that the RV came with a 12 month/15,000-

mile warranty without describing the limitations on the warranty.  Aplt. Br. at 31–32

(citing Aplt. App., vol. II at 438, 452).  The Platts allege that because there is nothing in

the brochure warning customers about the first year "shake down period" or the potential

for defects, "reasonable minds could conclude that Winnebago knowingly made a false

representation as to the RV's characteristics and benefits in violation of

[§ 6-1-105(1)(e)]." *Id.* at 31.  But as we have previously recognized, "[t]he CCPA does

---

[6] The relevant portions of section 6-1-105 provide:

> (1) A person engages in a deceptive trade practice when, in the course of
> the person's business, vocation, or occupation, the person:
>> . . .
>> (e) Either knowingly or recklessly makes a false representation as to
>> the characteristics, ingredients, uses, benefits, alterations, or
>> quantities of goods, food, services, or property or a false
>> representation as to the sponsorship, approval, status, affiliation, or
>> connection of a person therewith;
>> . . .
>> (g) Represents that goods, food, services, or property are of a
>> particular standard, quality, or grade, or that goods are of a particular
>> style or model, if he knows or should know that they are of another;
>> . . .
>> (i) Advertises goods, services, or property with intent not to sell
>> them as advertised.

not, as a matter of law, make actionable a statement which would otherwise be mere puffery." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1112 (10th Cir. 2009) (citation omitted). The brochure's language that describes the RV as "pure joy" and having "legendary construction standards" is therefore insufficient to sustain a claim under the CCPA.

Moreover, as the district court held, the Platts' claims that the brochure omitted relevant information are better analyzed under Colo. Rev. Stat. § 6-1-105(1)(u), which provides that a material omission is a deceptive trade practice if a defendant "[f]ails to disclose material information . . . known at the time of an advertisement or sale if such failure to disclose such information was *intended to induce the consumer to enter into a transaction*." Colo. Rev. Stat. § 6-1-105(1)(u) (emphasis added). The Platts claim Winnebago violated this provision because the brochure failed to disclose "(1) the RV warranty's many limitations, or (2) the RV's 'shake down period' and expected problems within the first year." Aplt. Br. at 33.

There is no evidence Winnebago failed to disclose material information to the Platts in order to induce them to purchase the RV. The brochure provided that the RV was subject to a "12-month/15,000-mile basic limited warranty," and directed that a consumer should "see [the] dealer for complete warranty information." Aplt. App., vol. II at 452. This put consumers on notice that the complete details of the warranty were not included in the brochure. In addition, the Platts testified that they were aware of the warranty at the time of purchase and chose not to review it. They presented no

evidence that Winnebago intended to induce them to purchase the RV by omitting information about the "shake down period." Accordingly, their claim under § 6-1-105(1)(u) must fail.

The Platts also claim a violation of the CCPA under subsection (r), which prohibits sellers from "[a]dvertis[ing] or otherwise represent[ing] that goods or services are guaranteed without clearly and conspicuously disclosing the nature and the extent of the guarantee." Colo. Rev. Stat. § 6-1-105(1)(r). The Platts allege that Winnebago violated subsection (r) by not disclosing in the brochure the nature and extent of the warranty. But the brochure advertised the "basic limited warranty" and advised customers to "[s]ee [the] dealer for complete warranty information." There can be no question that the warranty provided was a "basic limited warranty," and that the full terms of the warranty were available upon request. Without more, the Platts have not shown that Winnebago violated § 6-1-105(1)(r).

Finally, the Platts claim that Winnebago committed a deceptive act because at the time of execution it knew that it could not fulfill the express and implied warranties. The Platts provide no evidence to support this claim. The facts demonstrate that Winnebago attempted to honor the warranties. Winnebago communicated with Camping World during the initial repairs and scheduled an appointment to repair the Platts' RV at its own expense. The Platts, not Winnebago, cancelled the appointment for repairs. Because the Platts failed to provide any evidence to establish that Winnebago engaged in an unfair or

23

deceptive trade practice, we need not address their arguments regarding the other elements of their CCPA claim.

For the foregoing reasons, we AFFIRM.