**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**October 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

GOLD PEAK HOMEOWNERS
ASSOCIATION, INC.,

    Plaintiff - Appellant,

v.

GAF MATERIALS, LLC,

    Defendant - Appellee.

No. 23-1181
(D.C. No. 1:21-CV-03320-SKC)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **KELLY**, and **EID**, Circuit Judges.
_____

In 2015, Gold Peak Homeowners Association contracted with GAF Materials,

LLC to obtain enough shingles to reroof forty residential buildings.  Gold Peak also

obtained a Limited Warranty that disclaimed other warranties and that required, to

get coverage, notice within thirty days of any problems.  In 2018, Gold Peak's HOA

president and residents acknowledged that the shingles had excessive granule loss.

Two years later, Gold Peak notified GAF of the problem.  For failing to comply with

the thirty-day notice provision, GAF denied Gold Peak coverage.

_____
[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

1

Gold Peak then filed suit bringing state law claims for breaches of express and implied warranties as well as a federal law claim for a violation of the Magnuson-Moss Warranty Act.  The district court granted GAF's motion for summary judgment, holding that Gold Peak (1) did not meet the Limited Warranty's notice requirement, (2) could not bring a claim of implied warranty because of the Limited Warranty's conspicuous disclaimer, and (3) could not bring a Magnuson-Moss claim because the state claims failed.  Gold Peak now appeals the three dispositions.  Finding no genuine dispute of material fact on any of its claims, we affirm.

## I.

In 2015, Gold Peak Homeowners Association wanted to reroof forty of its residential buildings.  To do so, Gold Peak contracted with GAF Materials, LLC to acquire Timberline ArmorShield II shingles for the roofing project.

Along with the shingles, Gold Peak purchased a System Plus Limited Warranty for each of the residential buildings.  GAF's Limited Warranty provided that Gold Peak's "shingles will remain free from manufacturing defects that adversely affect their perform[ance.]"  App'x Vol. VII at 1925 (alteration in original).  And the Limited Warranty also included other provisions that clarified when and how to file a claim and that expressly disclaimed other warranties.

Of relevance are two provisions.  First, the Limited Warranty had a notice provision stating that Gold Peak "must notify GAF about any claim within **30 days** after [Gold Peak] notice[s] a problem."  *Id.* at 1836, 1930.  Second, the Limited Warranty contained a "**Sole and Exclusive Warranty**" provision.  *Id.* at 1933.  That

2

disclaimer was "definitionally conspicuous," "set apart in its own section with a heading in bold type" font, and "in the same size font as all other paragraphs on the page." *Id.* It stated, in all capital letters, "THIS LIMITED WARRANTY IS EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES . . . , WHETHER EXPRESS OR IMPLIED, WHETHER BY STATUTE, AT LAW OR IN EQUITY, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." *Id.*

Starting in 2018, Gold Peak's residents complained about excessive granule loss from the shingles. The Gold Peak Homeowners Association ("HOA") president testified that, for a period in 2018, "[a]nytime a windstorm" or "rainstorm would come up," residents "would have granules all over [their] patio furniture, all over the streets, coming out of the gutters." *Id.* at 1930. Indeed, the president went so far as to say, "It was like a playground full of sand everywhere." *Id.* And the president did not just hear about the excessive granule loss once, for "whenever [the loss] happened, people would complain." *Id.*

Two years later, in August 2020, Gold Peak had the shingles inspected, and thereafter, it made a claim under GAF's Limited Warranty complaining that the shingles shed granules excessively. *Id.* at 1926. GAF inspected the roofs and came back to Gold Peak with a settlement offer on some of the claims. *Id.* Declining the offer, Gold Peak instead filed suit. *Id.*

Once this case was removed from state to federal court, GAF moved for summary judgment. Applying Colorado law, the district court granted GAF's motion

3

as to each of Gold Peak's three claims.  The court first concluded that "the undisputed facts show[ed] that [Gold Peak] cannot establish the timely-notice element of its prima facie case for breach of express warranty."  *Id.* at 1932.  The court reasoned that "[i]t is undisputed Plaintiff noticed a problem by at least 2018 but did not notify Defendant of the problem until August 2020, years past the 30-day notice requirement."  *Id.* at 1931.  Next, the court concluded that the express disclaimer in the Limited Warranty excluded and replaced any implied warranties.  And finally, reasoning that Magnuson-Moss Act claims under 15 U.S.C. § 2310(d)(1) fall and rise with express and implied warranty claims under state law, the court held for GAF on Gold Peak's claims under the Act.  Gold Peak timely appealed, challenging the three grants of summary judgment on its claims.

## II.

Gold Peak argues that the district court should not have granted summary judgment on its claims for breaches of (1) an express warranty; (2) the implied warranty of merchantability; and (3) the Magnuson-Moss Warranty Act.

Stepping into the district court's shoes, we review the grant of summary judgment on these issues de novo.  *SEC v. GenAudio Inc.*, 32 F.4th 902, 920 (10th Cir. 2022).  Thus, just like the district court, we "view facts in the light most favorable to the non-moving parties" and "resolv[e] all factual disputes and reasonable inferences in their favor."  *Id.* (internal quotation marks and citation omitted).  And we must affirm the grant of summary judgment if GAF can show that "no genuine dispute as to any material fact" remains.  Fed. R. Civ. P. 56(a); *see Shehi*

4

*v. Sw. Bell Tel. Co.*, 382 F.2d 627, 629 (10th Cir. 1967) ("[S]ummary judgment must flow only as a matter of law from undisputed facts.").

Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). That is because "the requirement is that there be no *genuine* issue of *material* fact"—a fact "that might affect the outcome of the suit under the governing law." *Id.* at 248. Hence, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (citation omitted).

## III.

Gold Peak first challenges the district court's adverse summary judgment ruling on Gold Peak's claims for breach of an express warranty. To determine what state law applies to these claims, we look to Colorado's choice-of-law rules because "that is where the district court sat." *Mem'l Hosp. of Laramie Cnty. v. Healthcare Realty Tr. Inc.*, 509 F.3d 1225, 1229 (10th Cir. 2007). Colorado applies the law of the state "chosen by the parties unless there is no reasonable basis for their choice or unless applying the law of the state so chosen would be contrary to the fundamental policy of a state whose law would otherwise govern." *SDJ Ins. Agency, L.L.C. v. Am. Nat. Ins. Co.*, 292 F.3d 689, 692 (10th Cir. 2002) (quoting *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994)). The parties agree that Colorado

5

law applies, and they do not point to any other law that would otherwise govern or be contrary to Colorado's fundamental policy. Thus, Colorado law governs.

Under Colorado law, to state a claim for breach of express warranty, a plaintiff must prove (1) the existence of a warranty, (2) the breach of the warranty, (3) that the breach proximately caused the losses claimed as damages, and (4) that the defendant received timely notice of the breach. *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020) (applying Colorado law). The success of Gold Peak's express warranty claims hinges on the last requirement: whether Gold Peak gave GAF timely notice of the breach.

The plain terms of the Limited Warranty required Gold Peak to notify GAF about any claim within thirty days of noticing a "problem" with the shingles. App'x Vol. VII at 1836, 1930. That provision in mind, Gold Peak argues that it provided notice on August 24, 2020, after becoming aware of a problem from an inspection that took place on August 13, 2020. If August 13, 2020, was the earliest time Gold Peak was aware of a problem, then Gold Peak would be correct that it complied with GAF's notice provision. But the only way we could reach its conclusion would be to overlook the undisputed fact that Gold Peak became aware of its shingles problem two years before its 2020 inspection.

As understood from *undisputed* facts in the record, Gold Peak became aware of its shingles problem in 2018. The president of the Gold Peak HOA testified that, for a period in 2018:

6

> Anytime a windstorm came up, anytime a rainstorm would come up, you would have granules all over your patio furniture, all over the streets, coming out of the gutters. It was like a playground full of sand everywhere. And whenever that happened, people would complain.

App'x Vol. VII at 1930. Gold Peak, via the HOA board, noticed in 2018 that the shingles would produce a substantial amount of granule loss. And the resulting "playground full of sand" was a problem. *Id.* Yet Gold Peak did not provide notice to GAF at the time.

Based on these—again, undisputed—facts, Gold Peak failed to provide thirty day's notice to GAF after becoming aware of a problem in 2018. Gold Peak waited until August 2020, two years "after [it] notice[d] a problem." *Id.* at 1836, 1930. Consequently, Gold Peak failed to meet the notice element of an express warranty claim. We thus affirm the grant of summary judgment on the claim because no other facts would "affect the outcome of the suit" with that element missing. *Anderson*, 477 U.S. at 247–48; *see Barber ex rel. Barber*, 562 F.3d at 1228.

Gold Peak makes several arguments attempting to overcome the undisputed facts. In the end, it cannot get around them.

Trying to circumvent its HOA president's statements about the shingles' conditions in 2018, Gold Peak first points to GAF's Technical Bulletins, which indicated that granule loss after installation was "normal." App'x Vol. II. at 554. But, on that same bulletin, immediately under the "normal" language that Gold Peak relies on, the bulletin provides another header, titled: "How Do I Know If I Have A

Problem?" *Id.* And the section under that header clarifies that granule loss can only be "normal" for so long.

Indeed, in very clear terms, the bulletin states that if "significant" granule loss continues "[s]everal months after application," Gold Peak should "contact the GAF Warranty Services Department." *Id.* Gold Peak's HOA president acknowledged the problem of granule loss in 2018, *three years* after Gold Peak purchased GAF's shingles and warranty. That being so, even if we look to the bulletin as Gold Peak would have us do, no material dispute remains. Under the bulletin's terms, it was not "normal," App'x Vol. II at 554, for Gold Peak to have a "playground full of sand['s]" worth of granule loss, App'x Vol. VII at 1930, take place *years* after installment. Rather, it was "significant" granule loss that continued "[s]everal months after application," about twenty-four months, give or take. *Id.*

Gold Peak next states that GAF's Master Elite Contractor told Gold Peak that granule loss was normal. But nothing Gold Peak points to in the record supports that fact. Gold Peak cites to GAF's bulletin, Aplt. Br. at 18 (citing App'x Vol. II at 554–55), various statements about GAF employees' roles, *id.* (citing App'x Vol. II at 404; App'x Vol. V at 1225), and testimony that Gold Peak was aware of a granule loss problem after a storm in 2019, *id.* (citing App'x Vol. II at 586).

The closest thing that Gold Peak refers to is testimony that a company called "RE" told them that "a little slough off [was] to be expected." *Id.* (citing App'x Vol. V at 1217). Aside from the fact that GE is not a GAF Master Elite Contractor, the record is unclear *when* RE communicated this to Gold Peak and *how long* "a little

slough off [was] to be expected." App'x Vol. V at 1217. And what Gold Peak faced in 2018 was not a "little" loss by any means. *Id.* Simply put, a "playground full of sand['s]" worth of granule loss three years after purchasing the shingles was not a little slough off. App'x Vol. VII at 1930. It was a problem.

Ultimately, Gold Peak's arguments do not get around the undisputed facts: Gold Peak noticed significant granule loss years after the shingles' installation after receiving complaints from its homeowners and HOA president. As such, Gold Peak's attempt to plead ignorance at the sight of the problem back in 2018 does not get it anywhere.

Next, Gold Peak takes issue with how to define the term "problem" in its notice provision, which provides that Gold Peak "must notify GAF about any claim within **30 days** after [Gold Peak] notice[s] a problem." *Id.* at 1836, 1930. It argues that under the correct definition of a "problem," Gold Peak did not actually identify one until its inspection on August 13, 2020.

First off, GAF's bulletin—the one that Gold Peak points us to—defines the term "problem." Again, it clarifies that granule loss "[s]everal months after application" is a problem for which Gold Peak should "contact the GAF Warranty Services Department." App'x Vol. II at 554. And under that definition, Gold Peak became aware of a problem in 2018. *Id.*

Secondly, even putting aside the bulletin, the term's plain meaning leads us to the same outcome. Colorado courts "look to the plain meaning of the term" by looking to, among other resources, the dictionary when a contract does not provide a

9

definition of a term.  *Smith v. State Farm Mut. Auto. Ins. Co.*, 399 P.3d 771, 776 (Colo. App. 2017); *see Hamill v. Cheley Colo. Camps, Inc.*, 262 P.3d 945, 950 (Colo. App. 2011) ("In reviewing a contract, we must enforce the plain meaning of the contract terms.").  With that in mind, the term "problem" means a "personal matter that causes one difficulty or needs to be dealt with." *Problem*, Am. Heritage Dictionary of the Eng. Language 1404 (2011).

That definition does not change the outcome here.  The "playground full of sand" falling from Gold Peak's shingles for a period in 2018, App'x Vol. VII at 1930, amounted to a "matter that cause[d] one difficulty [and] need[ed] to be dealt with"—a matter of which it should have notified GAF.  *Problem*, Am. Heritage Dictionary, at 1404.  We find that the complaints about "granules all over [their] patio furniture, all over the streets, [and] coming out of the gutters" gave rise to a "problem," as plainly understood.  App'x Vol. VII at 1930.

Next, Gold Peak shifts gears.  It argues that the district court failed to assess if GAF suffered any prejudice from Gold Peak's allegedly late notice.  Relying on *Palmer v. A.H. Robins Co. Inc.*, 684 P.2d 187 (Colo. 1984), Gold Peak argues that "the Colorado Supreme Court has previously applied the Notice-Prejudice rule to express warranty claims."  Aplt. Br. at 25.  In all, Gold Peak wants us to require GAF to demonstrate prejudice and to hold that absent prejudice, a party's failure to comply with a notice requirement is excused for express warranty claims.  But Colorado caselaw indicates we cannot.

10

True, *Palmer* dealt with "notice" and mentioned "prejudice" in a footnote. 684 P.2d at 207 n.3. But nothing in *Palmer*, that footnote included, indicates that the Colorado Supreme Court adopted a rule requiring prejudice in cases involving *express warranty claims*. *Palmer* does not get Gold Peak anywhere.

Nonetheless, Gold Peak turns to three insurance cases that adopt the notice-prejudice rule. *See, e.g.*, *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 230 (Colo. 2001) ("[I]nsurer prejudice should now be considered when determining whether noncompliance with a [] policy's notice requirements vitiates coverage."); *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 647 (Colo. 2005) (applying the notice-prejudice rule to a tort liability insurance policy); *Gregory v. Safeco Ins. Co. of Am.*, 545 P.3d 942, 949 (Colo. 2024) (extending the notice-prejudice rule "to occurrence policies in the context of first-party homeowners' property insurance claims").[1]

Relying on those three cases, Gold Peak asks us to extend the application of the notice-prejudice rule from the insurance context to the express warranty context. Applying the current Colorado law before us, we decline that invitation.

The Colorado Supreme Court and its lower courts have specifically *limited* the application of the notice-prejudice rule to uninsured/underinsured motorist policies and occurrence-based first-party property insurance policies. *See Gregory*, 545 P.3d

---

[1] While this case was pending on appeal, the Colorado Supreme Court decided *Gregory*, 545 P.3d 942. Both parties have written supplemental 28(j) letters on how, if at all, *Gregory* affects the case here. *See* Aplt. Fed. R. App. P. 28(j) Letter at *1–2 (Mar. 14, 2024); Aple. Fed. R. App. P. 28(j) Letter at *1–2 (Mar. 20, 2024).

at 949 (only applying the notice-prejudice rule to "such policies"). In both situations, the rule has only ever applied to parts of one context—insurance policies. Although "*such policies* must follow" the notice-prejudice rule, no Colorado court decision has ever applied the rule to a product warranty. *Id.* (emphasis added). And unlike an insurance policy, the GAF warranty did not require Gold Peak to pay premiums, nor did it insure a risk. *See id.* at 949.

Moreover, what led the Colorado Supreme Court to apply the notice-prejudice rule were public policy justifications that all pertained to insurance claims, such as "(1) the adhesive nature of insurance contracts, (2) the public policy objective of compensating tort victims, and (3) the inequity of the insurer receiving a windfall due to a technicality." *Clementi*, 16 P.3d at 229. Again, this breach-of-warranty case does not involve insurance. *See id.*; *Gregory*, 545 P.3d at 949. Nor does it involve the "objective of compensating tort victims," *Clementi*, 16 P.3d at 229, or an objective to "cover the cost" of property damage covered by homeowners' insurance, *Gregory*, 545 P.3d at 949.

All considered, we decline to apply the notice-prejudice rule to the warranty here because no Colorado court has ever extended the rule's application outside of the insurance context. Exercising diversity jurisdiction, we must "predict what the state supreme court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007). In doing so, we refrain from extending the notice-prejudice rule to uncharted waters that no Colorado case has ever touched. That is especially so

12

because Colorado's public policy justifications for adopting the rule in insurance contexts do not neatly apply to a warranty like in this case.

For these reasons, we affirm the district court's grant of summary judgment on Gold Peak's express warranty claim. No genuine dispute as to any material fact remains. Fed. R. Civ. P. 56(a).

**IV.**

Gold Peak next challenges the district court's entry of summary judgment for GAF on Gold Peak's claims for breach of the implied warranty of merchantability. As before, we look to Colorado law to assess these claims. Under Colorado law, every sale-of-goods contract contains this implied warranty if the seller is "a merchant with respect to goods of that kind." Colo. Rev. Stat. § 4-2-314(1).

That said, the warranty is not foolproof. A merchant may disclaim the implied warranty of merchantability so long as it does so (1) with sufficient language and (2) conspicuously. *Id.* § 4-2-314(3); *see id.* § 4-2-316(2) ("[T]he language must mention merchantability and in case of a writing must be conspicuous."). Indeed, a phrase like, "There are no warranties which extend beyond the description on the face hereof," sufficiently disclaims an implied warranty. *Id.* And, as Colorado law explains, whether a disclaimer is conspicuous "is a decision for the court," not anyone else. *Id.* § 4-1-201(b)(10). In making that determination, Colorado law also defines "conspicuous" as "written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id.*

13

In this case, Gold Peak argues that the implied warranty of merchantability protects its shingles.  In response, GAF argues that its contract expressly disclaimed any such implied warranty.  Assessing this issue de novo, *GenAudio Inc.*, 32 F.4th at 920, we determine that (1) GAF's disclaimer uses sufficient language and (2) the disclaimer presents that language conspicuously, Colo. Rev. Stat. § 4-2-314(3).

First, we assess whether the disclaimer contains sufficient language.  On appeal, Gold Peak concedes that the disclaimer contained in the Limited Warranty expressly mentions merchantability as required by law.  Aplt. Br. at 32 ("GAF's [] disclaimer did specifically reference merchantability as required by Colorado law.").  Given that no dispute exists on whether the language is sufficient, the question then turns on whether the disclaimer was conspicuous.  The answer:  it was.

With a bolded header titled, "**Sole and Exclusive Warranty**," the disclaimer states in all capital letters that "THIS LIMITED WARRANTY IS EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES, . . . INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE."  App'x Vol. II at 550.  Among the other contract provisions, no other section has all capital letters like this disclaimer.  And although small, the text of this disclaimer is readily readable.

Gold Peak argues that no reasonable person would have noticed the disclaimer.  Gold Peak argues for a bigger header in a bold-type font and color different than every other header, with symbols or other marks surrounding it.  But conspicuous does not mean the most glaringly obvious thing on the page; rather, Colorado law

14

clarifies that we need only determine whether a reasonable person would have noticed it. Colo. Rev. Stat. § 4-1-201(b)(10). And here, a reasonable person would have.

We recognize that the text size of the disclaimer could have been bigger. But the text, at least to a reasonable person, "although small, does not require a magnifying glass." *Raup v. Vail Summit Resorts, Inc.*, 734 F. App'x 543, 548 (10th Cir. 2018) (concluding that a warning in "five-point font" was sufficiently conspicuous under Colo. Rev. Stat. § 4-1-201 because its terms were printed in capital letters).[2] In contrast to the terms in regular, sentence-case font that surround the disclaimer, the disclaimer has a bolded header "**Sole and Exclusive Warranty**," and its terms are printed in all capital letters. App'x Vol. II at 550 ("THIS LIMITED WARRANTY IS EXCLUSIVE AND REPLACES ALL OTHER WARRANTIES.").

Hence, GAF printed its terms "so as to attract attention to the essentials of the waiver." *Raup*, 734 F. App'x at 548 (concluding that small text was "conspicuous" even though someone who would need "reading glasses to read a newspaper would need such glasses to read the language"). Because of the disclaimer's different text type, it was "written, displayed, [and] presented" so that "a reasonable person against which it is to operate ought to have noticed it." Colo. Rev. Stat. § 4-1-201(b)(10).

---

[2] Recognizing that this unpublished decision is not binding, we rely on it only for its persuasive value. *See, e.g.*, *United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015).

As such, the disclaimer is sufficiently conspicuous, and we affirm the district court's grant of summary judgment on the implied warranty claim.

## V.

Gold Peak's last claim falls under the Magnuson-Moss Warranty Act. The Act provides a private right of action to a consumer harmed by a supplier's failure to comply with a warranty—either express or implied. 15 U.S.C. § 2310(d)(1). "Where Magnuson-Moss claims are brought for breach of a limited warranty, as here, we look to state law to determine the causes of action and the remedies available." *Platt*, 960 F.3d at 1269. That being the case, claims under the Act "stand or fall" with state warranty claims. *Id.* (citation omitted). Because Gold Peak's claims for breach of express and implied warranties fail as a matter of law, so too do Gold Peak's claims under the Magnuson-Moss Warranty Act. Thus, we affirm the district court's grant of summary judgment on this claim.

## VI.

For these reasons, we AFFIRM.

Entered for the Court

Allison H. Eid
Circuit Judge